KATE FELTES, Appellant, v. EDWARD TOBIN, Administrator, Appellee.

**CONTRACTS:** Consideration—Value of Services. Testimony as to how much the services performed by claimant were worth a year was not admissible in an action on express contract for

services performed at a certain rate, when said testimony did not have a tendency to establish the contract alleged.

WITNESSES: Competency—Transactions with Deceased. That the evidence of the claimant disclosed a personal transaction on her part with the decedent did not render such testimony inadmissible, and there was no ground for the exclusion of the evidence, in the absence of an objection of incompetency of the witness, as, under Sec. 4604, Code, 1897, it is the witness, and not the testimony, that is made incompetent.

WITNESSES: Competency—Age at Time of Conversation. The fact that a claimant against the estate of her father for services rendered the deceased was not of age at the time of the conversation testified to by her did not disqualify her from testifying as to such conversation.

WITNESSES: Competency—Transactions with Deceased. Where a witness, testifying as to a conversation of deceased with another person, did not take part in the conversation, she was not incompetent to testify thereto, under Sec. 4604, Code, 1897.

PARENT AND CHILD: Child's Claim for Services—Mutual Understanding. To justify the allowance of a claim of an adult child for services rendered her parent, it must be shown either that (a) what she did was upon express promise of the parent to pay therefor, or (b) that such facts and circumstances existed as would authorize a finding that there was an expectation of the parent to make compensation therefor. It is not necessary that an express contract be shown to have been made, or that a specified compensation was contemplated; and such an expressed or implied contract may be established by facts and circumstances warranting such an inference, as well as by direct proof. Evidence reviewed, and *held* that it was a question for the jury as to whether deceased expected to pay and the daughter expected to receive compensation for services rendered by her.

*Appeal from Dubuque District Court.*—D. E. MAGUIRE, Judge.

APRIL 15, 1919.

REHEARING DENIED SEPTEMBER 22, 1919.

ACTION to recover for labor resulted in judgment dismissing the petition. Plaintiff appeals.—*Reversed.*

*Anna M. Utt* and *G. A. Barnes,* for appellant.

*Frantzen & Bonson* and *F. D. Gilloon,* for appellee.

LADD, C. J.—Peter Lehnhoff departed this life July 24, 1916.· Edward Tobin was appointed administrator of his estate. The claimant is a daughter of decedent's, and, in her amended and substituted petition, alleges that she attained her majority in November, 1886. She claims to have rendered services for decedent from then until her marriage, February 17, 1896, in pursuance of a contract with him, under the terms of which he undertook to pay her $225 per year and interest at 5 per cent per annum; and that, though she sometimes worked for others, she always turned her wages so earned over to decedent. From this, as she alleged, should be deducted about $25 per annum paid out by decedent for claimant's clothing, and the difference allowed her as a claim against the estate. The evidence will be recited sufficiently, in passing on the rulings as to admissibility of evidence, to enable us to ascertain whether it was sufficient to carry the issues to the jury.

I. The family lived on a farm. Plaintiff testified that, throughout the period in question, she engaged in all kinds of work; that she was in and out of doors on the farm; and that wages earned elsewhere were turned over to her mother.

1. CONTRACTS: consideration: value of services.

"Q. Do you know how much your services were worth a year for the work that you performed, as you have testified to?"

Counsel for defendant objected, "as incompetent, irrelevant, and immaterial, the witness not having shown herself competent to testify; and furthermore, this claim being founded on oral contract, the question of value of services is immaterial." This objection was sustained on the ground "that an oral contract for a certain rate for

services" was alleged in the petition. The ruling was correct, as the evidence sought to be elicited would have had no tendency to establish the contract alleged.

II. The witness was asked "to state how you came to go to work for these different parties." "A. Why, they both sent me out, my father and both of them; so I obeyed, and went out." Counsel for defendant moved "to strike out the answer as disclosing a personal transaction with the deceased," and the motion was sustained. That the evidence disclosed a personal transaction with decedent did not render it inadmissible. In the absence of any objection to the competency of the witness, there was no ground for the exclusion of the evidence. *McDonald v. Young,* 109 Iowa 704.

2. WITNESSES: competency: transactions with deceased.

III. This question was asked: "You may state whether or not your mother sent you out." Objected to as incompetent, irrelevant, and immaterial, and having no bearing on any issue in this case. Objection was overruled, and witness answered: "Yes, sir, she sent me out; they were both willing to let me go." Defendant moved to strike that part of the answer "they were both willing to let me go," as stating a conversation or personal transaction with a person since deceased, and prohibited under Section 4604 of the Code. The motion was sustained. The section of the Code mentioned does not prohibit such testimony. It merely declares a witness incompetent to testify under conditions specified; and, the motion not being based on the incompetency of the witness, the ruling might well have been otherwise. Without objection, the witness testified that she turned the money, when received, over to her mother, and that the latter turned it over to her father.

IV. The same witness testified to having heard a conversation between her father and mother, August 15, 1889, when she was in another room upstairs, and they down-

stairs; that the stairway was in the hall; and that she could hear what they were saying.

"Q. Now, just tell the court what your father said. A. He said I was to get my wages, whether he was dead or alive. If the last one was there, I was to get my wages; she was to pay it out. Q. What reply, if any, did your mother make at that time? A. She said she was satisfied for me to get it. Q. Was there anything said at that time in the conversation as to what amount your wages were to be? A. Yes, sir. Q. What was said about that? A. Why, he promised me $225 a year to stay home with him, and she was satisfied."

Counsel for defendant moved "to strike out the answer, the testimony evidently showing a personal transaction with one since deceased." The objection was sustained. This was error, the competency of the witness not having been challenged.

The witness was then asked to state the conversation, if any, "in regard to the amount you are to get as wages." Objection was interposed, and the court directed witness to relate the conversation "that took place between your father and mother at that time relative to the amount that was to be paid to you as services." "A. Why, he told her that I was going to get it. Q. What, if anything, was said about the amount?" There was an objection, and the court again directed the witness to "give the conversation, as near as you are able to remember it; just what your father said and your mother said, if anything." "A. He said I was entitled to the money, and I was to get the money; and she said she was satisfied to give it, as I worked there so long, and both of them were satisfied then that I was to get so much. Q. Was the amount stated by either of them at that time? A. $225, he said."

The witness then explained that the father had said this to the mother; that, the day before, she had had a con-

versation with her mother "in regard to going away from home." "Q. Tell the court what that conversation was with your mother about leaving home. A. Why, they said they would give me that $225 for staying home; if I would stay home, they would give me that, and I could do any kind of work then."

Counsel for defendant moved that the answer be stricken out, "which details a state of facts prohibited by Section 4604 of the Code, being a conversation had with the father, as well as the mother, and at the 3. WITNESSES: competency: age time the conversation was had, the witness at time of conversation. was not of age. Furthermore, it is barred by the statute of limitations." The motion was sustained. The fact that the witness was not of age did not disqualify her to testify, nor was there anything in this evidence to raise the bar of the statute of limitations. The evidence of the conversation with the decedent is not prohibited by Section 4604 of the Code, and for these reasons, the court erred in sustaining the motion.

The court refused to permit the witness to testify that a conversation with decedent on the subject of her leaving home occurred on the day before she heard the conversation between her father and mother, hereinbefore testified to.

The question could not be answered without stating the subject of the supposed conversation, and in that way indicating the nature of the communication between them. She might have testified to having had a conversation, but the inquiry sought to go further, and ascertain what it was about, and to that extent, sought to elicit her conclusion as to the subject-matter of the talk, which necessarily must have been deduced from what was said. The witness was incompetent as such, not only to repeat the conversation, but to testify to conclusions to be drawn therefrom. The ruling has our approval.

"Q. You state whether or not you had any conversation or any talk with your mother on the day before you heard this talk between your father and mother when you were upstairs. A. Yes, I said I was going to leave, if they wouldn't make just a particular statement; that I should not work there for nothing; and they made a rule they would give me so much wages a year."

Counsel for defendant moved "to strike the answer out, as being clearly incompetent under Section 4604 of the Code, the answer disclosing that conversation was had with the father, as well as mother." The ruling was that "it may go out until a sufficient foundation is laid." As pointed out before, the ruling was erroneous. The evidence was admissible, though the witness may have been incompetent to give it; but her competency was not challenged. The witness then testified that she "had made arrangements for going away from home. After making the arrangements to go away from home, I remained. After that conversation I have given with father and mother, upstairs, I remained home until I was married, in the neighborhood of ten years."

The witness then testified that her mother had furnished her clothing which would amount to about $25 a year, and was asked whether, after she became of age, and before she got married, "there was any other conversation between your father and mother or anyone else, in which you took no part, in regard to your wages, or pertaining to that subject." "A. Yes, sir, there was. It was the week before I got married. They said they would pay my wages, but they had no money now; they wouldn't get it until later." Counsel for defendant moved to strike out the answer, for that the witness was prohibited from testifying, under Section 4604 of the Code, and the court remarked, "I think you had better lay more of a foundation."

This did not exclude the answer, but permitted the

claimant to make a showing such as to obviate the statute mentioned, by saying that the conversation occurred when she was in an opposite room, and "father and mother were in the front room." And in response to a question as to what the conversation was, she testified that "they said they would pay it." "Q. Now, state what they said; use their language as near as you can." Counsel for defendant then moved to strike out the answer given, on the ground that the witness was incompetent, under the statute. The motion was sustained. This was error; for not only had she testified that they were in a different room, but that she did not participate in the conversation. She answered:

4. WITNESSES: competency: transactions with deceased.

"Well, father said that he would pay it, and mother said that she was satisfied, and said, 'All right;' but that now they had loaned the money out, and couldn't give me anything now; but that they would pay it later."

Counsel moved to strike out the answer as being incompetent, irrelevant, and immaterial, being a personal transaction or communication between the witness and a party since deceased, and if not such personal transaction, that it did not tend to prove a contract between the witness and a party since deceased; also as barred by the statute of limitations. The motion was sustained for "that this was a personal transaction with the witness." This was not a ground for striking out the answer.

She then explained that, when this conversation took place, her father and mother were in separate rooms, opposite where she was; that the door was open; that she had had a conversation with her mother, about three weeks before she was married; and that this conversation referred to was about a week before that event.

"Q. Now, try and tell the court just what each one said in that conversation, using their language, as near as

you can. A. Why, she said that I worked, and that I ought to get paid; that I always obeyed them; and that I ought to get my wages, just the same as all the rest; and so, of course, they both agreed to that."

Counsel for defendant moved that the clause, "they both agreed to that," be stricken, because of the witness' being incompetent to testify, under Section 4604 of the Code. This was sustained. It should have been over-ruled. As she did not participate in the conversation, she was competent to testify. Had the motion been interposed for the reason that the answer was but a conclusion, a different question would have been presented.

"Q. When your mother said that to your father, did your father say anything? A. Why, he said that I should have it. Q. Well, was the amount stated by either one of them? A. Yes, sir,—$225, I was to get, a year."

She then testified that her mother said that, and that her father "was satisfied for me to get it."

On cross-examination, she told of having worked for different persons for wages; that none of it was expended by her; that she had made a mistake in fixing the date of the conversation first had as of August 15, 1886; that she should have said 1889; and that it occurred in the last-named year; that she took no part in the conversation about three weeks before her marriage.

V. After several witnesses had been called who tes-tified to the rendition of services by claimant at differ-ent times between her majority and her marriage, the claim-ant asked leave to file an amendment, and further hear-ing was postponed. On August 2, 1917, this amendment, as Count 2, was filed, and therein the allegations were sub-stantially as in the amended and substituted petition, save that no agreement as to the value of services is alleged therein, the claim being for the reasonable value of serv-ices rendered at the instance of decedent.

Claimant was then asked with reference to conversation between her father and mother when she was upstairs, "whether at any time your mother communicated to or told you what your father had said in regard to that." "A. Yes, she .said that I would get it."

This was objected to, and the court remarked:

"I will permit it to stand, but not for the purpose of showing a contract." And later on, "It may have some bearing in explaining her acts and conduct in going to the home afterwards *. * * as bearing upon her acceptance of the terms of the contract, if such contract is established by other competent evidence * * * but * * * ·it is not competent as evidence or proof of what that contract was or what the conversation was between the first two parties."

Later on, the court indicated an understanding that claimant was undertaking to prove an express contract of employment, and that testimony as to what the mother told her that the father said could not be used to prove the existence of any such contract or its terms.

Claimant then testified that she continued at home after the mother had informed her of the talk between herself and husband; that she worked some for others, but turned the money received over to her mother. Her husband swore that he heard a conversation between the decedent and his wife in regard to whether Kate was to receive pay for her services, in 1895, in which he took no part, that:

"I heard him argue with his wife in what way they were to pay those wages, and that they were going to pay it down on the farm. * * * He was telling his wife that he thought it was best if I would let these wages go on the farm; that they were a little short of money at that time."·

The witness referred to a farm he had contracted to purchase of decedent.

Other witnesses were called, who testified to the reasonable value of services such as the claimant rendered, and, upon the conclusion of evidence received in her behalf, the administrator moved that the claim be denied, for that (1) no express contract had been proven between claimant and decedent on which recovery could be had; (2) no claim could be made for services rendered on a *quantum meruit,* for that the same had not been proven; (3) the services had been rendered by claimant as a member of decedent's family, and not otherwise; and (4) the claim was barred by the statute of limitations. This motion was sustained.

That claimant rendered services continuously and faithfully for decedent for nearly ten years after attaining her majority, is put beyond all question, by the record. As she was decedent's daughter, however, and received support in the family, such services are presumed to have been gratuitous; and she may recover only upon showing either that what she did was upon the express promise of decedent to pay therefor, or of such facts and circumstances as will authorize a finding that the services were rendered in the expectation by the one of receiving and by the other of making compensation therefor. *Scully v. Scully's Exr.,* 28 Iowa 548. To justify the allowance of such a claim, an express contract need not be shown to have been made, nor specified compensation contemplated. See *McGarvy v. Rood's Admr.,* 73 Iowa 363, where the court, speaking through Seevers, J., said:

5. PARENT AND CHILD: child's claim for services: mutual understanding.

"The rule established by the decisions of this court is that, where the family relation exists, and services are rendered by one person to another at a time when both sustain such relation to each other, no promise to pay can be

implied because the services were performed by one and accepted by the other, as would be the case if such relation did not exist. The person claiming compensation must go a step further, and establish that there was an expectation by both parties that a compensation should be paid. In other words, the person seeking compensation must establish that the services were not performed gratuitously, and the presumption which prevails because of the existence of the family relation must be overcome by affirmative evidence. It is not essential that the amount of the compensation should be agreed upon."

See *Magarrell v. Magarrell,* 74 Iowa 378. This was approved in *Ridler v. Ridler,* 103 Iowa 470.

Either an express or an implied agreement to pay for services rendered by one living with a decedent as member of his family may be established by facts and circumstances warranting such an inference, quite as well as by direct proof. *In re Estate of Oldfield,* 175 Iowa 118.

Reverting to the evidence, we have to say that there was no competent evidence of an express contract. Though decedent and his wife may have talked of the terms on which claimant was to remain at home, there was no evidence that this, or that the daughter was about to leave, was communicated to her by authority of decedent. If the mother informed claimant of what was said between herself and husband, for all that appears it was on her own motion, and not in behalf of the decedent. But if the conversation occurred between them, as stated, the jury might have inferred therefrom that the decedent expected to pay for the services thereafter to be rendered. No other conclusion could well have been drawn therefrom. The jury might also have concluded that claimant not only heard of such conversation, but was told by her mother what decedent had said; that claimant, but for what decedent had said, would have left home; and that, in reliance thereon,

she abandoned her purpose of leaving home; and that the services subsequently. performed were rendered in the expectation of receiving compensation for what she did. In other words, the expectation of the decedent to have paid for, and claimant to receive, compensation for her services, being established, overcame the presumption that these were rendered gratuitously as a member of the family; and a contract, in these circumstances, is implied from the rendition of services by claimant, known to and accepted by decedent, to pay the reasonable value therefor. What was said in *Hankins v. Young,* 174 Iowa 383, 385, sustains this view of the law. Whether the claim is barred by the statute of limitations is not argued, and therefore is not considered.

The court erred in directing a verdict for defendant, and the judgment is—*Reversed.*

GAYNOR, PRESTON, and STEVENS, JJ., concur.