JANE SPICER, Appellee, v. ADMINISTRATOR OF THE ESTATE OF WILLIAM SPICER et al., Appellants.

**EXECUTORS AND ADMINISTRATORS:** Allowance of Claims—Services by Member of Family—Rebutting Presumption of Gratuity. The very nature of services rendered a family by a member thereof may rebut the presumption that they were gratuitous.

**EXECUTORS AND ADMINISTRATORS:** Allowance of Claims—Plea
2   in Bar of Claim—Essentials of Proof. The plea that a claim was
    barred because not filed *and proved* within one year from the pub-
    lication of notice of appointment of the administrator (conceding,
    *arguendo*, that the plea presents a good defense) is not established
    in the absence of proof of *a valid order for such publication.*

**APPEAL AND ERROR:** Reservation of Grounds—Points Not Raised
3   in Trial Court. The objection that a claim was not properly served
    on a special administrator may not be raised for the first time on
    appeal.

**TRIAL:** Instructions—Implied Withdrawal of Unsupported Count. No
4   affirmative withdrawal of an unsupported count is necessary in in-
    structing the jury when the court in the instructions wholly ignored
    said count.

**EVIDENCE:** Opinion Evidence—Concealed Basis. An opinion resting
5   on a basis withheld from the jury would be wholly incompetent.

    Headnote 1:   24 C. J. p. 285.   Headnote 2:   24 C. J. p. 337 (Anno.)
    Headnote 3:   3 C. J. p. 755.   Headnote 4:   38 Cyc. p. 1623 (Anno.)
    Headnote 5:   22 C. J. p. 709.

*Appeal from Hamilton District Court.*—G. D. THOMPSON,
Judge.

MARCH 17, 1925.

REHEARING DENIED DECEMBER 17, 1925.

THIS is a controversy over a claim in probate against the
estate of William Spicer, for services rendered to the decedent
during his lifetime. The defense was a general denial, and a
plea that the alleged services were rendered gratuitously by the
plaintiff, as a member of the family. Trial was had to a jury,
and a verdict was rendered for the plaintiff for the full amount
claimed. Judgment was entered upon the verdict, and the de-
fendant has appealed.—*Affirmed.*

*Martin & Alexander,* for appellants.

*R. G. Remley, Henderson & Jones,* and *Burnstedt & Hem-
ingway,* for appellee.

EVANS, J.—I. William Spicer died in 1921, at the age of 92 years. His wife had died in the year 1919, at the age of 86 years. The plaintiff had been reared from infancy by the decedent. She was the daughter of decedent's brother, and came into the family of the decedent a motherless babe of ten days. The decedent had no children. The plaintiff was reared in his family as an own child, and such relation was never broken until the death of the decedent. The plaintiff attained her majority in the year 1902. She was never formally adopted by decedent, but was always treated as a daughter by the decedent and his wife. The relations between her and them were at all times mutually affectionate, and were substantially equivalent to those between daughter and parents. When the plaintiff arrived at her majority, the decedent was 73 years of age. Her claim covers the period from that date to the date of death of the decedent. The nature of the service rendered was such as was incident to the care of the household and to the aged couple as the increasing burden of the years grew upon them.

1. EXECUTORS AND ADMINISTRATORS: allowance of claims: services by member of family: rebutting presumption of gratuity.

The court laid upon the plaintiff the burden of showing that the services rendered were so rendered in the mutual expectation that they should be compensated. One of the principal contentions on this appeal is that the evidence was insufficient to show such mutual expectation. Another contention is that the evidence is insufficient to show that the services rendered were even approximately of the value found by the verdict of the jury. This verdict was for $15,045.

On these two questions thus raised, it has become necessary for us to read the entire evidence. We have heretofore held that the mutual expectations of making and receiving compensation, as between the decedent and claimant, may be established by circumstance, as well as by direct evidence. That is to say, the nature and circumstances of the service may be such as to rebut the presumption of a gratuity. *Soderland v. Graeber,* 190 Iowa 765; *Feltes v. Tobin,* 187 Iowa 11; *In re Estate of Oldfield,* 175 Iowa 118; *Snyder v. Nixon,* 188 Iowa 779. On this question, the record herein is not lacking in direct evidence, although it be somewhat meager. Such direct evidence has

much corroboration in the circumstances. We are required to take the evidence in the light most favorable to the plaintiff, as appellee. The record discloses that she was a very capable person. Before attaining her majority, she had graduated from the high school at Webster City. She had at that time ambitions which she might have attained if she could have dissolved the ties which bound her to her quasi parents. One of the circumstances urged against her by the appellant is that she immediately found employment in Webster City, and that she continued the same during most of the time covered by her claim herein. It is true that, during much of such time, she has acted as bookkeeper successively for certain firms in her home town. This employment, however, was always subject to her duties in the household, and was not permitted to interfere therewith. In the earlier years following her majority, her household duties were not as arduous, naturally, as they became later, with the advancing years of her parents. The wife of the decedent was frail and sickly for many years prior to her death. She met with an accident at one time, resulting in serious injury to her arm, which greatly disabled her for years thereafter. Much of the time she was unable to dress herself or to comb her own hair. This does not mean that she was wholly helpless in doing more or less other work. She did aid in many of the household duties, when her strength would permit. But the real dependency of the household was upon the plaintiff. No domestic help was employed. She rose early in the morning and worked late at night. She was the caretaker of furnace and stove, and built all the fires. In the last years of the life of the wife, she required much care from the plaintiff. It is also true that, during the last ten years of his life, the decedent suffered much disability from sickness, both chronic and acute. He was at all times very deaf, and it was difficult to communicate with him. He suffered from an affliction of the feet, which greatly impeded his ability to get about, even when he was otherwise comparatively well. He was frequently confined to his bed with acute illness for two or three weeks at a time. There were times when trained nurses were employed, because of the seriousness of the illness. Notwithstanding such employment, the duties imposed upon the plaintiff became more

onerous, rather than less. The nurse had to have help, and she was the helper at all hours of the day or night. At such times she suspended her employment down town. In the last two years of the life of the decedent, it became necessary to have assistance in his care. A man and his wife were employed, who moved into the home and rendered such help. Much night work was necessary in the care of the decedent during such period, and plaintiff was the helper of the man nurse at such time. During the entire period covered by this claim, the plaintiff paid her own personal expenses out of her own earnings. She also contributed much from such earnings to the necessities and conveniences of the household. The long habit of thrift and economy had brought the decedent to the verge of penuriousness, and he was reluctant to incur any expenditure that went beyond the barest necessity. Cleaning, papering, and painting were not necessities, within his conception. His thrift was very pardonable, in that his estate was only a modest one of about $20,000.

It appears that he frequently expressed his great appreciation of the care and service rendered by the claimant, and that he expressed his intention that she should be compensated. Much of this evidence indicates that his expectation was that she was to be compensated out of his estate. He said that she "would have" his property. Whether he intended to make a will to that effect, or whether he labored under the belief that she would inherit as his child, or whether he rested in the knowledge that the law would award to her a quantum meruit against his estate for her services, is an open question, upon the record. Under all the circumstances appearing, it is quite inexplicable that he should not intend that she should have adequate compensation out of his estate. He had no lineal descendants. He was one of a family of ten brothers and two sisters. One brother survived him. A majority of the other members of his family left lineal descendants, who were resident in several states. The majority of them were wholly unknown to him. The amount which the plaintiff could receive as a collateral heir would be less than $200. He could not have believed that this would be adequate compensation to her.

Upon the whole record, we think the evidence is sufficient

to support the finding by the jury of mutual ·expectation of making and receiving compensation.

What has already been said largely answers also the claim that the verdict was excessive. Manifestly, if she was entitled to anything, she was entitled to a very substantial sum. The amount allowed her was $15 per week for the entire period. Her witnesses quite uniformly fixed the value of· such services at $25 per week. It is manifest, also, that there were many weeks in that period, especially during the period of illness of the decedent or his wife, when $15 a week would have been very inadequate as compensation. The particular service rendered by the plaintiff, especially during the last 10 years of the life of each .parent, was a virtual necessity to their comfort and to the prolongation of their lives. It was a service which no stranger could have rendered as well, and which no stranger would have done for such compensation. A claim for such a service has in it a strong.moral quality, and it should not be looked upon too readily as a spoliation of an estate. We hold, therefore, that the verdict has sufficient support in the evidence on both propositions here considered.

II. The plaintiff was appointed as administrator of the estate. She filed her claim two days before the expiration of one year from the date of publication of notice. Thereafter, she procured the appointment of a special adminis-

**2. EXECUTORS AND ADMINISTRATORS: allowance of claims: plea in bar of claim: essentials of proof.**

trator, to pass upon such claim. The defendant pleaded that her claim was barred because it was a claim of the fourth class, and was not proved within one year.

On this tendered issue, the defendant had the burden of proof. Whether the plea was good, if proved, we have no occasion to decide. The defendant failed to put in the proof that the time limit had run. He did put in evidence the time of publication of notice of appointment of administrator. But he put in no proof of authority for such publication. We have definitely held that the order upon which the publication is made is a necessary part of the proof. *Craig v. Craig Estate,* 167 Iowa 340; *In re Estate of Camp,* 188 Iowa 734. See, also, Section 3304, Code of 1897.

III. It appears from the record that the case was de-

fended below, and the appeal is prosecuted here, by counsel for the collateral heirs. The point is made here that notice of the

**3. APPEAL AND ERROR: reservation of grounds: points not raised in trial court.**

claim was not properly served upon the special administrator, and that, therefore, the special administrator is not in court, and that, therefore, the lower court was without jurisdiction. To sustain this point would be to dismiss the appeal for want of jurisdiction appearing in the record before us. This would not necessarily bar the plaintiff from sustaining her jurisdiction in the court below by a showing there, which is not apparent upon the record here. The contention, therefore, presents a sharp edge to the appellant. Sufficient now to say that no such point was made in the court below, and for that reason alone, it cannot be made here.

IV. . The claim of plaintiff was stated in two counts. The first count declared upon an express contract; the second upon a quantum meruit. No evidence was offered in support of the

**4. TRIAL: instructions: implied withdrawal of unsupported count.**

first count, as distinguished from that offered in support of the second .count. The court ignored the first count, in the statement of issues to the jury and in the instructions. The appellant assigns error, in that the court should have affirmatively instructed the jury to disregard Count 1, and to disregard all the evidence introduced in support thereof. If Count 1 had been included by the court in its statement of issues to the jury, it would have been requisite that it should be affirmatively withdrawn from their consideration. Inasmuch, however, as the court did not include it in the statement of issues, but wholly ignored it, and included only the second count in such statement, and inasmuch as no evidence was offered in support of it, except such as was relevant to the issue upon the second count, there was no call upon the court to make an affirmative withdrawal, or to make any reference whatever to the count thus ignored.

V. Many grounds of reversal are predicated upon rulings in the offer and admission of evidence. The questions thus raised are all elementary, and call for no extended discussion. For instance, the appellant put to his witness Miller the following question:

"2. Assuming, Mr. Miller, that Jane Spicer·lived in the household as a daughter would, and was employed down town from the time she was graduated from high school, at the age of 18 years, how would you say her services to the household would compare in value with the benefits which she would receive and had received by being raised from childhood as a daughter?"

The court sustained objection to the foregoing question. The ruling was proper, for various reasons. If expert opinion could be admissible in such form, the witness had not qualified as an expert in such knowledge. Further, if a comparison of this kind were permissible to the jury, it was yet not permissible to a witness. Such question could have been answered by the witness without disclosing at all the basis of his opinion or of the value which he put on either factor of the comparison.

5. Evidence: opinion evidence: concealed basis.

The same question is raised with reference to the offered testimony of other witnesses on behalf of the defendant. The same question was put by defendant, on cross-examination, to some of the witnesses for the plaintiff. In such case, it was clearly not cross-examination.

We have carefully scanned all the grounds of reversal based on rulings in the offered testimony, and we find no prejudicial error in any ruling. The elementary character of the question presented in each of said rulings will not justify an extended discussion thereof. Our foregoing discussion covers the points which are principally relied on in argument.

Formal grounds of reversal are laid as against each instruction given by the court. A common objection made to each instruction is: "There is no predicate in the record on which to base the same." No particular affirmative error is pointed out in any instruction, but it is argued that the record is deficient in its support of the instruction. And this deficiency is predicated, in large part, upon the deficiency of the petition in its allegations. The petition was not attacked in the court below. For that reason alone, we will not consider attack upon it here on appeal. The instructions are quite brief, and are rather general. But no request for additional instructions was made, nor is it now claimed that the appellant has suffered from

any omission of statement in the instruction. What we have already said in preceding divisions of this opinion answers the claim that the instructions are not supported by the record.

We find no prejudicial error. The judgment below is, accordingly, affirmed.—*Affirmed.*

FAVILLE, C. J., and ARTHUR and ALBERT, JJ., concur.