Eva Krogh Clark (Claimant), Appellee, v. L. E. Krogh, Administrator, Appellant.

No. 44361.

June 21, 1938.

Jepson, Hatfield & Jepson, for appellant.

Naglestad, Pizey & Johnson, for appellee.

Kintzinger, J.—Claimant is a daughter of decedent, and the claim filed by her is for board, lodging, and care furnished decedent for eight or ten years prior to his death. Claimant lived with her parents in their home on a farm until her marriage in 1907, at which time she and her husband moved to

Utica, New York, where they resided in a home purchased by them until 1919. Claimant and her family then returned to Iowa at the request of claimant's mother who wrote her "to come home to be near her because she was so poorly."

On their return they lived in a small house for about two years, when they moved into her father's home at Sergeant Bluff, Iowa, and helped take care of her mother. Her mother died in 1922, and claimant and her family continued living in the same house until decedent's death in 1934, at the age of 74 years. After claimant's return to Iowa, they purchased a small house in which they lived for about two years prior to moving into her father's home. After her mother's death, and in 1924, the decedent conveyed his home to the claimant in exchange for the house they purchased shortly after their return to Iowa.

The services for which compensation is claimed are alleged to have been performed during the period between 1922 and 1934, during all of which time decedent had been living with and cared for by claimant.

Appellant contends that plaintiff cannot recover from decedent's estate because the decedent lived with the claimant as a member of her family, and that no implied agreement to pay for her services has been established in this case. The undisputed evidence shows that no express promise to pay for such services was ever made by decedent. The case therefore turns upon the question whether or not an implied agreement arose under the facts and circumstances in this case under which it can be said that decedent intended to pay for the services received, and that claimant expected to receive remuneration therefor.

It is conceded that this action having been tried to a court, sitting without a jury, the court's finding has the same force and effect as the finding of a jury insofar as the facts are concerned. Appellant contends, however, that the court erred in its finding of facts, because the evidence is insufficient to warrant its finding; that the evidence was insufficient to warrant the allowance of the claim, and that if the matter had been tried before a jury it would have become the court's duty to have sustained a motion for a directed verdict. This is the only question in the case.

Appellee contends that there was evidence in the record

tending to support the court's finding and that the judgment of the court should therefore be affirmed.

Appellant contends that a family relation existed between claimant and decedent during all of the time such services were performed; that the claimant failed to show any intention on the part of the decedent to pay for the services rendered; or that there was any expectation on her part to receive any remuneration therefor; that claimant failed to show that the services were not rendered gratuitously because of the family relationship between decedent and claimant under the rule that reciprocal services rendered by and between members of a family are presumed to be gratuitous unless there is an implied agreement to pay therefor.

Claimant's eleven-year-old daughter had been attending school in Utica, New York, up to the time they left there, was then half-way through the fourth grade and lost a half year when they returned to Sergeant Bluff, Iowa. Houses were scarce there at that time, and claimant and her family moved in with her parents for three or four months when they found a vacant house and moved in. About four months afterward claimant purchased a small house from her father and moved into it and lived there for about two years. Her mother was sick in 1921 and during that year, at her parents' request, she and her family moved into her parents' home, which was larger than the small house in which they had been living. The mother died in 1922, after which claimant and her family continued living in her father's house until 1924 when they purchased it by trading their small home for it, and from that time the father continued living with appellee and was cared for in her home until his death in 1934.

Without setting out the evidence in detail, it is sufficient to say that there is testimony in the record tending to show that the appellee and her family left her home in New York and returned to Iowa in 1919 at the request of her mother because of her illness. The testimony tends to show that before the mother died in 1922, appellee and her family were asked by her parents to move into her father's home, which was remodeled to serve her family. In 1921 claimant and her family moved into the larger house at her parents' request to better care for her mother until her death in 1922. In 1924 the father traded the house in which they were then living to his daughter. It ap-

pears that after 1924 the home in which claimant and her family were living belonged to the claimant, and thereafter she continued to furnish her father room, board, and care in his illness until his death.

Appellant contends that, under the rule of law in this state, reciprocal services rendered by and between members of a family are presumed to be gratuitous, and unless the evidence shows that they were rendered under such circumstances that there was an intention between the parties that there was to be a remuneration therefor, appellee cannot recover. Such is the rule of law in this state, but an express promise need not be shown. Scully v. Scully's Exr., 28 Iowa 548; Snyder v. Nixon, 188 Iowa 779, 176 N. W. 808; McGarvy v. Roods, 73 Iowa 363, 35 N. W. 488.

In McGarvy v. Roods, 73 Iowa 363, l. c. 365, 366, 35 N. W. 488, l. c. 489, in discussing this question the court said:

"Counsel for appellant claim that Scully v. Scully's Exr. [28 Iowa 548] holds there must be an express promise,.. * * * This is a mistake. The rule established by * * * this court is that where the family relation exists, and services are rendered by one person to another at a time when both sustain such relation to each other, no promise to pay can be implied because the services were performed by one and accepted by the other, as would be the case if such relation did not exist. The person claiming compensation must go a step further, and establish that there was an *expectation* by both parties that a compensation should be paid. In other words, the person seeking compensation must establish that the services were not performed gratuitously, and the presumption which prevails because of the existence of the family relation must be overcome by affirmative evidence. It is not essential that the amount of the compensation should be agreed upon. This view * * * is in accord with the weight of authority in this country; but whether this is so is immaterial, for the reason that such is the view adopted by this court."

Although such a family relationship has been shown to exist between the parties as to warrant the presumption that no remuneration was expected, such presumption will not prevail if it appears from the facts and circumstances in the case that both parties expected or intended that remuneration

should be paid for the services performed. Snyder v. Nixon, 188 Iowa 779, 176 N. W. 808; Marietta v. Marietta, 90 Iowa 201, 57 N. W. 708; In re Estate of Bishop, 130 Iowa 250, 106 N. W. 637; Soderland v. Graeber, 190 Iowa 765, 180 N. W. 745; Feltes v. Tobin, 187 Iowa 11, 171 N. W. 739; Spicer v. Administrator, Estate of Spicer, et al., 201 Iowa 99, 202 N. W. 604; In re Knox Estate, 220 Mich. 469, 190 N. W. 238.

In Marietta v. Marietta, 90 Iowa 201, l. c. 204, 57 N. W. 708, l. c. 709, this court said:

"We doubt very much whether the familiar rule of the law that where a son or daughter remains under the parental roof, and works and labors as one of the family, after arriving at the age of majority, the presumption is that the services are gratuitously rendered, applies to the facts disclosed in evidence. In the case at bar the plaintiff had gone out into the world, and ceased to be a member of his father's family. He returned to his aged parents when they were unable to care for themselves. He rented the farm, and, as far as the evidence shows, he paid the rent to his father. The learned judge who tried the case made a special finding of facts, in which he found that, under the evidence above referred to, and the other facts in the case, the services were rendered with the expectation of the deceased and the plaintiff that the plaintiff should receive compensation therefor."

From the testimony introduced it was at least a question for the jury, or the court in this instance, to determine whether or not a family relationship was reestablished between this claimant and her parents in such a manner as would raise a presumption that any services performed by her were gratuitous. From the testimony in the record, the court could also find as a matter of fact that the services performed by claimant for her father during the time in question were intended to be paid for by decedent.

There is also evidence in the record tending to show that for many years prior to his death decedent was in poor health, had a poor heart, had bowel trouble; that claimant frequently bathed him, took care of him in the bath room; that at times when he was in bed his voice was very weak, he was pale, bloated, and suffering from hiccoughs; that claimant prepared his meals, gave him the parlor on the first floor of the home

for a bedroom, furnished him board and room, and attended him in his sickness; that decedent had the flu twice, had intestinal trouble in 1926 when he was sick in bed for approximately a month, and in 1922 he suffered from a partial paralysis of the muscles of the lower bowel, causing him to lose control thereof. The testimony also tends to show that claimant was a good cook and a good housekeeper, and took good care of the decedent during the time in question.

There is also testimony in the record tending to show that the decedent told various witnesses that he was well taken care of, and that he expected to remunerate claimant for her kindness. There is also testimony in the record tending to show the reasonable value of services performed by claimant.

As the finding of facts by the lower court are controlling upon this court, it necessarily follows that if there is evidence tending to support such finding, we are bound thereby. We therefore herewith set out in substance the facts found by the lower court:

"2. The claimant herein, Eva Krogh Clark was and is a daughter of the decedent; that she lived as a member of her parents' family until 1907 when she married W. T. Clark; that on the day of her marriage she and her husband left Sergeant Bluff, Iowa, the family home, and moved to Utica, New York, Mr. Clark's native city and state; that the claimant and her husband became residents of Utica, New York, their only child, a daughter, was born there, and they resided there a little over twelve years; that during this period Mr. Clark had continuous employment and they purchased a family home in the vicinity of the city school where their daughter attended after reaching school age; that in the year 1919 they sold their home; Mr. Clark left lucrative employment, and at considerable expense in shipping household goods and for railroad fare they returned to Sergeant Bluff, Iowa, where Mrs. Clark's mother was in poor health, and both parents were getting along in years; that Eva Krogh Clark, the claimant, was the only daughter of Mr. and Mrs. Krogh, the other children being two sons; that for a short time after returning to Sergeant Bluff, and until they could get possession of a home they purchased from Mr. Krogh for $1,000, they lived with Mr. and Mrs. Krogh, moving from there to the home they purchased near by, from

where Mrs. Clark ministered to the needs of her ailing mother until about September, 1921, when because her mother's condition required more constant attention, Mrs. Clark and her husband and their daughter moved into Mr. and Mrs. Krogh's home, enabling her to better provide for her mother's needs; that the mother died in 1922, and Mr. and Mrs. Clark and their daughter continued to live in Mr. Krogh's home after the death of Mrs. Krogh, providing him with the best of care and attention in sickness as well as in health, until Mr. Krogh's death in 1934; that before moving into Mr. Krogh's home on this occasion, Mrs. Clark expended considerable of her own funds in repairing it and making it over for the use of two families, and not long after her mother's death Mrs. Clark became the owner of the home by a deed from her father; she and Mr. Clark deeding back to Mr. Krogh therefor the home they had purchased from him on returning to Sergeant Bluff.

"3. From the matters stated above, the court further finds and holds that the family relationship had been broken by the marriage of claimant and her removal from the home of her parents and the State of Iowa to the State of New York where she remained for a period of approximately 12 years; and such relationship was not reestablished by her return from her marriage domicile to care for her aging parents.

"4. That the record further discloses that the decedent had a serious illness in 1926, and that prior to that time he had an attack of influenza, and that he had a further attack of influenza in 1930; that at the time of his illness in 1926 he was troubled with some intestinal ailment consisting of a partial paralysis of the sphincter muscle of the rectum, resulting in inability to control bowel movements, and this ailment was progressive in nature and continued with increasing intensity up to the time of his death in 1934.

"5. That the record further discloses that the decedent needed some measure of care and attention from the time of the death of his wife in 1922; that from the fall of 1926, on account of the intestinal ailment, decedent required the constant care and attention of some person in keeping his person, clothing and bedding in a clean and sanitary condition; that the necessity for such care and attention became progressively more insistent from the time of his illness in 1926 to the time of his death in 1934; that such care and attention was faithfully

and efficiently given by the claimant herein, and the record discloses that the decedent recognized and appreciated the care and attention given him by plaintiff and expected to recompense her therefor.

"6. That on this record the court finds there was an implied contract to pay for the services rendered. Incidentally there is also evidence in the record that a request was made by decedent that claimant remain in the home and perform the services.

"7. The evidence shows in substance that claimant was absent for various short periods between March, 1922, and September, 1934, when Mr. Krogh died, but that claimant personally cared for and rendered services to decedent for 381 weeks.

"8. The court further finds that for part of this time the reasonable value of the service rendered was $5.00 per week, and for the balance of the period was $7.50 per week, and that the total reasonable value of the services rendered by claimant from March 9, 1922, to the date of his death in September, 1934, is the sum of $4,027.50; and the court finds that the claim of claimant should be allowed in that sum and judgment rendered therefor."

Judgment was therefore rendered against the estate in that sum with interest from May 29, 1937, to all of which defendant excepted.

We have carefully examined the record in this case and without setting out any more evidence, it is our conclusion therefrom that the findings of fact by the lower court has substantial support in such testimony. It is therefore our conclusion that this court is bound by the findings of the lower court.

The case was tried to the court without a jury. The finding of fact by the court therefore has the same force and effect as the verdict of a jury We are constrained to hold that the facts and circumstances in this case were sufficient to warrant the court's finding that there was an implied agreement on the part of decedent to pay for the services performed.

For the reasons hereinbefore expressed, the judgment of the lower court in awarding conpensation against decedent's estate

should be allowed to stand. The judgment of the lower court is therefore affirmed.—Affirmed.

STIGER, C. J., and ANDERSON, DONEGAN, RICHARDS, MITCHELL, HAMILTON, and SAGER, JJ., concur.