IN RE ESTATE OF THOMAS M. TALTY.

MARY H. TALTY, Appellant, v. M. E. TALTY, Executor, Appellee.

No. 45986.

September 22, 1942.

M. G. Kellam, of Greenfield, and Roscoe S. Jones, of Atlantic, for appellant.

Addison G. Kistle and McGinn & McGinn, all of Council Bluffs, for appellee.

GARFIELD, J.—The claim is informally stated. The executor's answer is a general denial. Decedent, Thomas M. Talty, was a bachelor, aged 74 when he died. Claimant, Mary H. Talty, is the wife of George, a brother of Thomas. Claimant and her husband were each 72 at the time of trial in 1941. Gene Talty, unmarried, is the son of Mary, the claimant, and George. Surviving Thomas are three brothers, including George and M. E. (the executor), and one sister.

Since 1934, Gene, as a tenant, occupied a farm in Cass county owned by his uncle, Thomas. Gene's father and mother, who received old-age pensions, lived with Gene on this farm. Apparently the father was not able to do much except take care of himself. For about 25 years prior to June 1, 1938, Thomas lived in Atlantic in a house owned by him. Mrs. Bopp was decedent's housekeeper. From June 1, 1938, until he died on October 6, 1940, Thomas lived on the farm with Gene and re-

ceived the care and nursing from Gene's mother for which claim is made.

■ I. Appellee has moved to dismiss the appeal because it is said appellant failed to comply with Rule 30 of this court in her assignments of error. While there has not been literal compliance with our rule in all respects, we think there has been a good-faith effort so to comply. We have had little difficulty in determining what appellant's real complaints are, especially those which we regard as vital. Appellee's brief indicates that counsel also understand the claimed errors relied upon. The motion to dismiss is therefore overruled. Muntz v. Travelers Mut. Cas. Co., 229 Iowa 1015, 1019, 295 N. W. 837, 840; Wilson v. Iowa So. Util. Co., 228 Iowa 724, 729, 293 N. W. 77, and citations; Smith v. Middle States Util. Co., 224 Iowa 151, 155, 275 N. W. 158.

■ II. Appellant first assigns as error the refusal of the court to permit her to testify to what she observed of decedent. Her counsel made it plain that he was not inquiring as to anything she may have done for decedent. The court ruled that appellant was incompetent because of the dead man statute, section 11257, Code, 1939, to testify to her observations of decedent. The ruling was erroneous. The questions did not call for any personal transaction or communication but solely for appearance and actions of decedent ascertained merely by observation. An interested witness is not incompetent to give such evidence. Diesing v. Spencer, 221 Iowa 1143, 1145, 266 N. W. 567; Dolan v. Henry, 189 Iowa 104, 177 N. W. 712; Hayes v. Snader, 182 Iowa 443, 165 N. W. 1041; Yoder v. Engelbert, 155 Iowa 515, 517, 136 N. W. 522; Marietta v. Marietta, 90 Iowa 201, 203, 57 N. W. 708.

There are other erroneous rulings on evidence of which appellant complains, but since they are not apt to occur on a retrial we do not discuss them.

■ III. The grounds of the motion for directed verdict made at the close of appellant's evidence are that the services are presumed to have been gratuitous because as a matter of law appellant and decedent were members of the same family and the evidence fails to show a mutual expectation of payment; that from June 1, 1938, until his death, Thomas was

mentally incompetent and unable legally to expect to pay appellant; and that there is no competent evidence of the value of appellant's services. The sustaining of the motion constitutes the principal assignment of error. We think the court erred in directing a verdict for the executor.

It is elementary that ordinarily where one person performs services for another which are known to and accepted by him, the law implies a promise to pay therefor. In re Estate of Walton, 213 Iowa 104, 106, 238 N. W. 577, and citations. Where, however, it is shown that the claimant and the person served are members of the same family and the services are such as are usually performed by one member of a family for another, a presumption ordinarily arises that the services are gratuitous. In such case, before the claimant can recover, in the absence of an express promise to pay, it must be shown that the services were rendered under the mutual expectation that payment would be made therefor. Snyder v. Nixon, 188 Iowa 779, 176 N. W. 808; Feltes v. Tobin, 187 Iowa 11, 21, 171 N. W. 739; Scully v. Scully's Executor, 28 Iowa 548. The presumption of gratuity arises only when the family relation is shown. Marietta v. Marietta, 90 Iowa 201, 204, 57 N. W. 708; In re Estate of Bishop, 130 Iowa 250, 253, 106 N. W. 637; Snyder v. Guthrie, 193 Iowa 624, 628, 187 N. W. 953, 24 A. L. R. 950; Wilson v. Else, 204 Iowa 857, 863, 216 N. W. 33.

Since there was clearly sufficient evidence of the value of appellant's services, it is apparent that the motion to direct was sustained on the theory that a family relation, giving rise to a presumption of gratuity, appeared as a matter of law. But the matter of family relationship was a special defense which appellee was required to plead in order to be available to him. Section 11961, Code, 1939, provides that special defenses to claims in probate must be pleaded. See, also, section 11209, requiring that matters in avoidance must be pleaded in the answer. That it was appellee's duty to plead the claimed family relation in defense, if relied upon by him, see Saddler v. Pickard, 142 Iowa 691, 121 N. W. 374, and Schroeder v. Schroeder, 119 Iowa 67, 93 N. W. 78. The Saddler case has been cited with approval in Black v. Miller, 158 Iowa 293, 306, 138 N. W. 535; In re Estate of Rule, 178 Iowa 184, 194, 159

N. W. 699; Wilson v. Else, 204 Iowa 857, 861, 216 N. W. 33. See, also, Wise v. Outtrim, 139 Iowa 192, 204, 117 N. W. 264, 130 Am. St. Rep. 301, and In re Estate of Frederickson, 191 Iowa 315, 321, 322, 182 N. W. 184.

In Peterson v. Johnson, 205 Iowa 16, 23, 24, 212 N. W. 138, 142, it is said:

"It is, of course, proper under such circumstances for the defendant to plead and prove the relationship of the parties and all the facts pertaining to the transaction, by way of defense."

In 28 R. C. L. 679, 683, sections 13, 17, it is said:

"However, ordinarily the burden is on the person resisting payment to show the relation of dependency. * * * Furthermore as between brother and sister there is no presumption that they live together as members of the same family, and the family relationship must be proved by the party who asserts it, * * *."

In many of our cases of this character, the opinion recites without comment that the estate pleaded in defense to the claim that the services were performed gratuitously by a member of the family. See, for example, In re Kleinhesselink, 230 Iowa 1090, 1091, 300 N. W. 315, 316; In re Estate of Docius, 215 Iowa 1193, 1194, 247 N. W. 796; Spicer v. Administrator, 201 Iowa 99, 100, 202 N. W. 604; Soderland v. Graeber, 190 Iowa 765, 766, 180 N. W. 745.

Since the only defense pleaded was a general denial, there was no issue raised as to the claimed family relationship between appellant and decedent. During appellee's cross-examination of Gene Talty in an attempt to show a family relation, appellant's counsel (to no avail) several times called attention to the limited nature of the pleaded issues. In her motion for new trial appellant asserted that the verdict had been directed on an issue not properly before the court.

 IV. Aside from appellee's failure to plead the claimed family relation, we think such relationship, giving rise to a presumption of gratuity, did not appear as a matter of law.

The farm home was Gene Talty's, not decedent's, into

which Gene had taken his father and mother, the claimant. For approximately 25 years prior to June 1, 1938, decedent had lived in a home of his own in Atlantic. In 1937, decedent, at his request, had been a visitor in Gene's home from Decoration Day until October 1st, when he returned to his own home in Atlantic. Gene gave the following undisputed testimony of a talk with his uncle shortly before May 30, 1938:

"When I came in to visit with him, he said he wanted to come down and spend the summer again and so I told him that I would come up that Decoration Day. That is approximately when I got him the other time. Decoration Day I was pretty busy so I didn't come but I did come the day after Decoration in 1938."

It is true decedent did not return to his home in Atlantic again but stayed on with Gene. This may well have been due to his failing health and the devoted care furnished by appellant.

From the time decedent went to Gene's in 1938 until his death he was at all times mentally incompetent. Appellee has maintained, both in the lower court and here, that such incapacity appears without dispute. He was nearly blind, although he could tell the difference between daylight and dark, and got around with the aid of a cane. He gradually grew worse until he suffered a stroke on March 24, 1940. After his stroke he was completely incapacitated and continuously confined to bed. It then became hard to understand what he said.

During his entire stay at Gene's, decedent had little control of his kidneys and bowels. The jury could have found, viewing the evidence in its most favorable light, that decedent both wet and soiled his bed nearly every night, that he wet and soiled his clothing nearly every day and sometimes oftener. After these frequent accidents, appellant cleaned his person and changed his clothes and bedding as soon as the condition was noticed. She bathed decedent and washed and ironed his clothing and bedding. The hired girl refused to wash these soiled articles.

Decedent did several things that might be expected of one mentally incompetent. He would urinate outdoors, regardless of who was there to see him. He would wander away. He

would get in bed wearing his clothing, shoes, and overshoes. After he suffered his stroke, he frequently managed to get out of bed and crawl around the room on his hands and knees. Even before he had his stroke, decedent ate his meals with some difficulty. Appellant put his food on his plate, cut his meat, buttered his bread, and at times fed him with a spoon. She washed his face before mealtime. After his stroke, appellant took all decedent's meals to his bed and fed•him with a spoon. She gave him medicine every two hours for the first month and thereafter when needed. Either appellant or Gene slept in an adjoining room in order to wait on decedent at night.

During the entire period covered by this claim decedent rendered practically no services on the farm nor in the home, although before he suffered his stroke he performed some few simple tasks. It is true decedent turned over the rentals from the farm to Gene, who paid taxes, upkeep, and other obligations owing by decedent, as directed by him. Also, during the period covered by this claim Gene received $20 a month rent from the Atlantic home, which decedent's housekeeper continued to occupy. This money, the jury could have found, was largely paid out for the benefit of decedent and at his direction.

It is a fair inference that decedent, at his own request, came into Gene's home in 1938 for another visit similar to that in 1937. Appellant did not come into decedent's home to receive support from him in return for her services. It could hardly be claimed that decedent and appellant as a matter of law were members of the same family during the four months' visit in 1937. Nor is it the only reasonable conclusion that during the entire time commencing June 1, 1938, such family relation existed. Except for the four months in 1937, there is no evidence that decedent and appellant ever lived under the same roof prior to the period covered by this claim. Appellant was a poor woman, without means of bestowing charity upon this bachelor brother-in-law, who was able to pay for the services rendered by her. At least prior to June 1, 1938, she was under neither legal nor moral obligation to serve decedent without pay. There is no evidence that any of decedent's brothers or his sister ever offered to care for him. He was badly in need of care from someone.

There was no blood relationship between appellant and decedent. The presumption of gratuity ordinarily is less strong as the relationship between the parties becomes more remote. 28 R. C. L. 682, section 17; 71 C. J. 56, section 23.

The services rendered by appellant for Thomas were entirely disproportionate to what little work the latter was able to do. Reciprocal services were neither exacted nor performed, nor was decedent mentally or physically capable of rendering such services. The presumption of gratuity due to the family relation arises because of the reciprocal character of family duties and services. Snyder v. Guthrie, 193 Iowa 624, 628, 187 N. W. 953, 24 A. L. R. 950; Soderland v. Graeber, 190 Iowa 765, 775, 180 N. W. 745; Snyder v. Nixon, 188 Iowa 779, 781, 176 N. W. 808.

It has been said that where the services are so disproportionate as not to be reciprocal the presumption of gratuity does not apply, and the one who has performed the greater service will be entitled to recover. 71 C. J. 62, section 25; 28 R. C. L. 683, section 18. See Snyder v. Nixon, 188 Iowa 779, 782, 176 N. W. 808; In re Kleinhesselink, 230 Iowa 1090, 1094, 300 N. W. 315. We have held that the services may be of such character and extent and performed under such circumstances as to exclude the idea of gratuity. Sheldon v. Thornburg, 153 Iowa 622, 629, 133 N. W. 1076.

That decedent turned over to Gene the rentals from the farm or the town property does not conclusively establish the family relationship nor necessarily prevent recovery. The farm rentals were also turned over to Gene before 1938, when there can be no claim of a family relation. As having some bearing, see In re Kleinhesselink, supra.

As tending to support our conclusion that the claimed family relation, giving rise to a presumption of gratuity, even if this question were properly before the court, was not conclusively established, see Clark v. Krogh, 225 Iowa 479, 483, 280 N. W. 635; In re Estate of Frederickson, 191 Iowa 315, 182 N. W. 184; In re Estate of Bishop, 130 Iowa 250, 106 N. W. 637.

The judgment is—Reversed.

WENNERSTRUM, C. J., and STIGER, SAGER, BLISS, and HALE, JJ., concur.