Y. A. YODER, Appellee, v. J. C. ENGELBERT, Administrator of the Estate of JOSEPH McARTOR, Deceased, Appellant.

**Estates of decedents:** EVIDENCE: TRANSACTIONS WITH DECEDENT. In seeking to establish a claim against an estate the claimant may testify to facts and circumstances ascertainable by mere observation, even though inferences may be drawn therefrom tending to support his claim. Thus where it appeared from other competent evidence that decedent made his home with plaintiff for a large part of a specified time, plaintiff and his wife were competent to state the times when decedent came and went, when he made visits to other places and was absent from their home.

**Same:** CLAIMS: GRATUITOUS SERVICES: INSTRUCTIONS. Where it was not alleged that decedent was a member of plaintiff's family, and he was not such in a legal sense, but was shown to be abundantly able to pay for his living, while claimant was a man of limited means and heavily indebted, and it was undisputed that decedent intended and in fact did make payments for his living from time to time, and the claim was resisted on the theory that claimant had been compensated by decedent, the court was justified in refusing any instructions on the subject of gratuitous services to a member of the family.

**Same:** DECLARATIONS OF DECEDENT. The declarations of decedent that he was making his home with his granddaughter, the wife of claimant, and that he liked it better there than at the home of a son, because he did not get along well with the latter's wife, were admissible to show that he intentionally made his home with the plaintiff.

**Instructions:** REFUSAL OF REQUESTS. Refusal to give requested in-

4 Structions, covered by those given by the court on its own motion, is not erroneous.

*Appeal from Iowa District Court.*—HON. R. P. HOWELL, Judge.

THURSDAY, JUNE 6, 1912.

ACTION brought against an administrator for board, washing, and horse feed furnished to the decedent for two hundred and thirty-four weeks between November 1, 1902, and January 1, 1908. $3.50 per week is claimed for board, and $0.25 per week for washing and $50 for horse feed, making a total of $927.50. The answer was a general denial and an allegation that the board, washing, and horse feed furnished were furnished at an agreed price of $2 per week, which amount had been fully paid. There was a trial to the jury and a verdict and judgment for $300. The defendant appeals.—*Affirmed.*

*Wade, Dutcher & Davis* for appellant.

*Popham & Havner* for appellee.

EVANS, J.—The deceased was a widower for some years before his death. The plaintiff's wife was his granddaughter, and had been a member of his family before her marriage to the plaintiff. Living in the same community were his five children, with all of whom he was on friendly terms. He visited all of them, and spent more or less time in their homes. It is undisputed, however, that he stayed at the home of the plaintiff a large part of the time. There is abundant evidence of disinterested witnesses tending to show that he made his home there; and that he did so with the expectation of rendering compensation therefor.

The one serious question in the case relates to the admissibility of certain testimony of the plaintiff and his wife, under the provisions of section 4604. Other competent testimony having been introduced tending to show that the deceased made his home with the plaintiff for a large part of the time between the dates heretofore named, the plaintiff and his wife were permitted to testify to the times or dates when he came and went, and when he made visits to other places and was absent from the home of the plaintiff. It is urged by appellant that the admission of this testimony was in violation of section 4604. The question is not without its difficulties. We think, however, that it is ruled by our former cases. The witnesses did not testify that they furnished him board during the time that he stayed with them, or that they rendered him services. An inference to that effect, however, could be drawn in connection with the other competent testimony. We have frequently held that facts ascertainable by mere observation may be testified to in such a case, even though inferences may fairly be drawn therefrom tending to support the plaintiff's claim. *Furenes v. Eide*, 109 Iowa, 511; *Campbell v. Collins*, 133 Iowa, 152; *Campbell v. Collins*, 152 Iowa, 608; *Graham v. Mc Kinney*, 147 Iowa, 165; *Martin v. Shannon*, 92 Iowa, 374; *Marietta v. Marietta*, 90 Iowa, 201; *McElhenney v. Hendricks*, 82 Iowa, 657; *Walkley v. Clarke*, 107 Iowa, 451. Though the question was close in the present case, we think the statute was not violated by the admission of such testimony.

*1. ESTATES OF DECEDENTS: evidence: transactions with decedent.*

II. Appellant complains of the instructions of the trial court, in that they failed to permit the jury to find that the board was furnished to the deceased as a gratuity and as a member of the family. There was no such issue in the case, unless it was made by the general denial. Furthermore, the evidence was such that there was no room for the submis-

*2. SAME: claims: gratuitous services: instructions.*

sion of such an issue to the jury. The decedent was not a member of the plaintiff's family in any legal sense. The decedent was a man of means, abundantly able to pay for his board. The plaintiff was a laboring man with very little means, and was heavily indebted for the little property which he had. It is undisputed that the deceased was expecting to make compensation for his board; and that he did from time to time pay more or less therefor. In the opening statement to the jury made by counsel for defendant, which was preserved of record he stated as follows: "No question but what he stayed there part of the time. He did not stay there all the time. . . . If he sold his farm, he had money left in the bank, and he at all times paid his way. That is the truth, and I think it will come out in this case. He paid his way, and paid it there. We make no question in this case but what the old man intended, and the truth is, and I think it will develop in this case, that these parties received from him $2 per week, whenever he was there, up to comparatively a short time before his death; and that was their arrangement followed right along." The foregoing presents the theory upon which the case was defended in the trial court; and the trial court was therefore justified in refusing any instructions on the subject of gratuitous services to a member of the family. *Estate of Bishop*, 130 Iowa, 250; *Rogers v. Millard*, 44 Iowa, 466.

III. Certain witnesses testified to conversations with the deceased. The substance of some of this testimony was that he said he was making his home with his grand-

3. SAME:
declarations
of decedent.

daughter; and that he liked it there better than "at Charlie's, because he did not get along nicely with Charlie's wife." Complaint is made of the admission of this testimony as immaterial and as reflecting in a prejudicial way upon the parties interested in the estate. The statements of the deceased were clearly proper for the purpose of showing that he was intentionally

making his home with the plaintiff. The explanation was germane to the statement, and was a part thereof. The fact involved was one which naturally called for an explanation. There was no error in receiving the entire statement of the deceased on that subject.

Complaint is made of the refusal of the trial court to give certain instructions requested by the defendant. The instructions so presented by defendant were all marked "Refused." Practically all of them, however, were incorporated in the instructions given by the court on its own motion. The only substantial matter eliminated was an instruction requested on the subject of gratuitous services. This point has already been considered.

4. INSTRUCTIONS: refusal of requests.

The record is without error, and the order of the trial court must be *affirmed*.