W. P. RIGGS, Executor, Appellant, v. R. H. GISH, Appellee.

**SET-OFF AND COUNTERCLAIM:** Barred Claims—When Pleadable.
1 Statutory principle reaffirmed that a debtor, when sued, may employ, as a set-off against plaintiff's demand, any claim which is barred by the statute of limitation, (1) provided that the debtor owned the claim when it became barred, and (2) provided that the claim was not barred when the demand sued on accrued.

**PAYMENT:** Presumption and Burden of Proof—Execution of Promis-
2 sory Notes. The burden to prove payment never shifts from the litigant who pleads it—not even when he creates by his evidence a *presumption* of payment on which he may safely rely, in the absence of counter evidence. So held where the pleader established the execution of promissory notes by his debtor, and thereby generated the rebuttable presumption that all prior claims between the parties had been settled and paid.

**APPEAL AND ERROR:** Harmless Error—Refusing to Compel Elec-
3 tion. Record reviewed, and held that the refusal to compel a defendant to elect whether he would proceed on tort or on contract was quite harmless.

**APPEAL AND ERROR:** Presentation and Reservation of Grounds—
4 Waiver. The right of a party to recover damages as for the breach of a contract may not be raised for the first time on appeal.

**DAMAGES:** Measure of Damages—Contract Basis—Instructions. Where
5 parties have contracted that contemplated damages shall not exceed a certain amount, a particular measure of damages which will give practical effect to the agreement will be approved.

**APPEAL AND ERROR:** Harmless Error—Interpretation of Contract
6 by Jury. The submission to the jury of the interpretation of a contract is harmless when the interpretation placed upon it by the jury is exactly what the court must have placed upon it. (See Book of Anno., Vol. 1, Sec. 11548, Anno. 177 *et seq.*)

**INTEREST:** Computation—Compound Interest. Interest may not be
7 compounded, in the absence of an agreement to that effect. (See Book of Anno., Vol. 1, Sec. 9404, Anno. 43 *et seq.*)

**INTEREST:** Computation—Unliquidated Set-off. In an action on a
8 note executed with the mutual understanding that the maker and the payee would, at some future date, agree on and adjust certain set-offs against the note, interest on the set-offs may very properly be allowed from the date of filing the answer pleading

such set-offs.   (See Book of Anno., Vol. 1, Sec. 9404, Anno. 48 *et seq.*)

**WITNESSES:** Competency—Transactions With Deceased — Nonpersonal ·Transactions. A party to an action is competent to testify against an executor as to the receipt of letters through the mail, and as to whose signature is attached to the letters; also, as to the physical condition of an instrument when he signed it.

**Headnote 1:** 37 C. J. pp. 805, 806 (Anno.)  **Headnote 2:** 30 Cyc. p. 1264.  **Headnote 3:** 4 C. J. p. 943 (Anno.)  **Headnote 4:** 3 C. J. p. 694.  **Headnote 5:** 17 C. J. p. 967.  **Headnote 6:** 4 C. J. p. 1026.  **Headnote 7:** 33 C. J. p. 192.  **Headnote 8:** 33 C. J. p. 240 (Anno.)  **Headnote 9:** 40 Cyc. p. 2317.

*Appeal from Hamilton District Court.*—H. E. FRY, Judge.

NOVEMBER 24, 1925.

REHEARING DENIED JANUARY 14, 1926.

ACTION upon five negotiable promissory notes. The execution of the notes was admitted, and various items were pleaded as counterclaims or offsets to said notes. The facts are fully stated in the opinion. Defendant recovered on the several items of his counterclaim, and plaintiff appeals.—*Affirmed.*

*R. G. Remley* and *Martin & Alexander,* for appellant.

*F. J. Lund,* for appellee.

STEVENS, J.—W. P. Riggs, as executor of the estate of George Herr Reinicker, deceased, brings this action to recover upon five negotiable promissory notes, aggregating, with interest, $11,913.62, executed by appellee to his decedent. The petition was filed January 29, 1914. The execution of the notes is admitted, but appellant complains of the method adopted by the court in computing the interest thereon. The answer, in three counts, sets up various items as counterclaims or offsets against the notes. On or about January 23, 1902, appellee leased all of Section 13, except the northwest quarter, of Reinicker for a term of two years, at a cash rental of $3.00 per acre. This lease provided that:

"The party of the first part hereby agrees to lay the main tile lines through the above tract of land and to take off all surface water before the 15th of June, 1902."

On November 25, 1902, a new lease was entered into between the parties for the term of one year, commencing March 1, 1903, for the same rental as agreed upon in the prior lease. This lease provided that:

"The party of the first part reserves the right to enter upon the said land to construct all laterals that may be necessary to drain the land to put it in good condition for farming and by so doing agrees to deduct on his rent to the amount of $1.50 to $2.50 per acre, as above mentioned parties may agree on a settlement."

Both leases were offered in evidence, and attached to the latter is the following unsigned agreement:

"It is further agreed that the party of the second part grants and convey to the party of the first part his heirs, his assigns, his administrators or employees to enter upon the Amanda Gish land in Section Fourteen 14, Township 88, Range 24, West 5th PM in Hamilton County, Iowa. And B. H. Gish land in Section 15, Township 88, Range 24, West 5th PM in Hamilton Co. Iowa. In which the two tracts of the above described two hundred and sixty acres of the Geo Herr Reinicker land has a twelve-inch tile drainage outlet, if in any event the outlet become defective either by poorly laid, broken, or filled in tile the said Geo Herr Reinicker, his heirs, assigns, executors or employees has the right to enter upon the above named Amanda Gish and B. H. Gish lands, repair, clean out, or reconstruct the above named tile line. In case the six-inch tile line if they become broken, mislaid, or filled in in like manner he will have the same right as on the above named twelve-inch tile line. In case the above named twelve-inch tile line or six-inch tile line continues to be too small in capacity the said Geo Herr Reinicker, his heirs, assigns, administrator or employees must build or cause to be built exclusively at his own cost of construction on the above named Gish lands tile of adequate size so the Gish lands will be in the same state of cultivation as it was when not flooded by the unnatural flow of water from the above described Reinicker land. The above named rent shall remain

in an unsettled condition until an adequate drainage system
for the above described tracts of land. When a satisfactory
drainage system has been completed satisfactory to all parties
herein mentioned the said Geo Herr Reinicker may deduct from
the damage which will be yearly $1.50 to $2.50 per acre as they
may agree, on approximately 500 acres effected by damage on
the Gish land. His rents and credits due when a settlement has
been reached.''

Count I of appellee's counterclaim alleges the failure of
Reinicker to complete the tile contemplated by the first lease by
June 15th, and asks judgment for damages resulting therefrom;
while Count II seeks damages to his premises on account of the
alleged breach of the later lease. Appellee owned the NE¼
of Section 15, and had the possession, control, and management
of Section 14. Reinicker owned Section 13. All of the above
land is situated in Liberty Township, Hamilton County. Sec-
tions 13 and 14 appear to be low, and subject to overflow, and
much thereof required tiling, to render it suitable for cultiva-
tion.

In Count III appellee alleged that he entered into a con-
tract with Reinicker in 1908 to furnish the material for, and
to construct, certain tile drains for him, and that the amount
due therefor, after allowing credits, is $6,232.27, for which
amount, with interest, he asks judgment.

For reply, appellant generally and specifically denied the
allegations of the counterclaim, and alleged that the items
thereof were barred by the statute of limitations, and not avail-
able to appellee either as counterclaims or set-offs; that, by the
execution of the several notes in suit, which was subsequent to
the time the damages complained of accrued, appellee waived all
claims therefor, and is estopped from pleading same; that the
said claims were all settled and paid by Reinicker prior to his
death; that the damages, if any occurred, accrued to the tenants
in possession thereof, and not to appellee; that whatever appel-
lee did in the way of tiling was for his own, and not Reinicker's,
benefit. Appellant also pleaded an offset of $2,880 which he
claims is due the estate as rent for the 280-acre tract for the
years 1902 and 1903. The above defenses were urged by ap-

pellee at every step of the trial, and in every form known to our procedure.

I.   Count I of appellee's counterclaim is divided into two parts.   In one he asked damages caused by the failure of his lessor to construct the main tiles as agreed, and in the other he asked damages resulting from the failure of the lessor to comply with the terms of the lease and contract for the year 1903.   The damages sought to be recovered in Count II cover several years, and are based upon the breach of the alleged contract appended to the second lease.   Appellant contends that these claims were all barred by the statute of limitations at the time the indebtedness represented by the notes arose, and that they are not, therefore, available to appellee as counterclaims or set-offs to the notes.

The court instructed the jury that these items were barred by the statute of limitations, but permitted the same to be offset against the notes.   Section 3457 of the Code of 1897 provides:

"A counterclaim may be pleaded as a defense to any cause of action, notwithstanding it is barred by the provisions of this chapter, if it was the property of the party pleading it at the time it became barred, and was not barred at the time the claim sued on originated; but no judgment thereon, except for costs, can be rendered in favor of the party so pleading it."

The notes in suit are renewals of prior notes, and the indebtedness was created before the claims upon which appellee's counterclaim is based arose.   But it is further contended by appellant that appellee neither alleged nor proved that he was the owner of the claim for damages to Section 13.   The allegations of the petition could easily have been made more specific, but we think they are sufficient on this point.   It is conceded that the legal title to Section 13 is in Amanda Gish, appellee's mother, but the evidence tended to show that appellee had the full control and management thereof, and that he is the owner of the claims.   A written assignment executed some years after a portion of the damages accrued, was introduced in evidence. The purpose of the writing, as expressed therein, was to evidence the assignment which was orally made many years before.   The question of fact was for the jury.   Although barred by the

1. SET-OFF AND COUNTERCLAIM: barred claims: when pleadable.

statute of limitations, the claims pleaded in Counts I and II were properly allowed by the court as offsets.

The cause of action pleaded in Count III was clearly not barred by the statute.

II.  The court instructed the jury that the execution of the notes gave rise to a presumption that all prior claims for damages were paid.  The court, however, further instructed the jury that such presumption was not a conclusive one, and might be overcome by proof.  The burden of proof to establish payment was placed upon appellant.  The instruction submitting this issue is not open to attack.  The burden of proving payment or settlement was upon the party alleging it.  The fact that such party was aided by a presumption did not transfer the burden to his adversary.  In the absence of testimony tending to overcome the presumption, appellant would have been entitled to a verdict in his favor; but evidence was introduced, and thereby an issue of fact was presented for the jury.  It is significant in this connection that the cause of action alleged in Subdivision 2 of Count I and in Count II was based upon the contract attached to the lease of November 25th, and referred to in the evidence as Exhibit Y-1.  In submitting these causes of action, the court instructed the jury that recovery could be had only upon the contract, and that, unless the evidence showed that it was a part of the lease, as claimed by appellee, no recovery could be had thereon.  This was a question of fact, and was properly submitted to the jury.

*2. PAYMENT: presumption and burden of proof: execution of promissory notes.*

III.  Appellant moved the court, before any testimony was introduced, to require appellee to elect whether he would proceed, as to the cause of action alleged in Count I, on tort or on contract.  The motion was overruled.  This ruling must be sustained, although appellee might well have elected to rely upon the contract.  The following indorsement appears on the back of the lease dated January 23, 1902:

*3. APPEAL AND ERROR: harmless error: refusing to compel election.*

"November 15, 1902, received $480, being payment in full of note No. 1, $240 being allowed on first year's rent for failure to tile land as agreed."

This apparently evidences a complete settlement for all

damages received by appellee under this lease. The evidence shows the above indorsement to have been made by one Fox, who was the agent of Reinicker. Appellee and Reinicker were cousins, and appear to have sustained particularly close and friendly relations. On October 16, 1902, Reinicker wrote appellee as follows:

"Your check for $720 received. I herewith enclose cancelled note for rent and will credit your account for same as you and I know there was damage to your crops on your land, your Mother's and my land have been a great damage to you and will continue to be a damage to you for the tile are too small. I have to put in another line across your and your mother's, clear to my fence. Their tile are too small and are about full of mud, but Ben and I will settle for the damage, I do not want you to throw up the farm for next year for it will take all next year to complete the laterals and then we have the extra main line to put in. The Lord knows when we will get done, get a good system when I get done tiling then I will figure each year and all the years all the lands affected by damage of the excessive or water continually flowing across you and your mother's land. Now Ben if you do not throw up this I will allow you from $1.50 to $2.50 per acre damage on all of my land when we settle the damage after we get through tiling. You know as we talked it over the other day. Mr. Fox knows nothing about farming, so I do not see how he can estimate damage for you. I will not have him to fix them if he did try to settle them with you. Any time you can't pay for the rent out of the crop I want you to give new notes and I will carry you to the settling day. Ben it was too wet, I could not get the land drained in time to do you any good. Come in to see me when you come to town."

This letter clearly repudiates the indorsement · on the back of the lease, and indicates the intention of the writer to defer settlement as to all claims for damages to a later date. We do not perceive how appellant was prejudiced by the ruling, even if it were held to have been erroneous.

IV. It is also contended by appellant that Section 13, during the several years for which damages are claimed, was occupied and cultivated by tenants, and that, as the true measure

of damages was the injury to the crops, the
cause of action accrued to the tenants, and not
to appellee. The general rule urged by appel-
lant may be conceded, but the causes of action
pleaded in Count. II and Subdivision 2 of Count I are based
upon contract. Nowhere in the record was the right of appellee
to recover the damages alleged as for the breach of a contract
raised, except in the manner here indicated.

4. APPEAL AND
   ERROR: presen-
   tation and res-
   ervation of
   grounds: waiver.

We may as well at this time dispose of appellant's further
contention that the measure of damages submitted to the jury
was erroneous. The court instructed the jury that the measure
of damages on these counts was the difference
between the rental value of the land as it would
have been if the contract had been complied
with by Reinicker, and its rental value in the
condition shown, limiting the recovery to a maximum amount of
$2.50 per acre. In its instructions the court told the jury that
the parties did not agree upon the exact amount that should
be deducted from the rent as damages, and that he therefore
chose to submit to them the measure above stated. That the
parties contemplated that damages would accrue by reason of
the failure to construct the tile, and as the result of the drains
constructed across Section 13 for an outlet, and that they should
be settled on the basis of a diminution in rental, is clearly in-
dicated by the several instruments from which we have quoted.
The measure of damages adopted by the court made it possible
for the jury to give substantial effect to the intentions of the
parties, as therein expressed. It may be assumed that, in leasing
the premises to tenants, the condition of the land was taken into
consideration in fixing the rental. It was wet, and needed tiling.
Reinicker had attempted to tile the same and to carry the water
from his land across Section 13 for a better outlet, but, as shown
by his letters, had been unable to perfect a drainage system.
There is no reason why the parties, if they desired to do so,
might not agree upon a basis for settling damages. As the
amount was not specifically agreed upon, the damages were not
liquidated, but a maximum recovery was fixed. The court gave
practical effect to the agreement.

5. DAMAGES:
   measure of
   damages: con-
   tract basis: in-
   structions.

V. The court was of the opinion that the contract, Exhibit

Y-1, was so uncertain and ambiguous in its terms as to require the assistance of extraneous evidence in its interpretation. The court therefore submitted the questions of fact

6. APPEAL AND ERROR: harmless error: interpretation of contract by jury.

to the jury. It is now urged by appellant that the court should have, instead of submitting a question to the jury, interpreted the instrument and based his instructions thereon. The law is well settled in this state that, where a contract is not intelligible to an ordinary person without the aid of extrinsic evidence, and such evidence is capable of different inferences, the court will submit the question to the jury. *Rapp v. Linebarger*, 149 Iowa 429. The facts and circumstances all tended to show that the intention of the parties was to provide in the contract for a deduction from the rent of from $1.50 to $2.50 per acre. The jury evidently so found, and such must have been the interpretation placed upon the contract by the court, if he had construed it. Therefore appellant suffered no prejudice, even if the instruction was erroneous.

VI. The court computed the amount of the notes in suit, and directed the jury to return a verdict therefor. The computation allowed interest on the note at 8 per cent, and upon each interest installment as it came due, at the

7. INTEREST: computation: compound interest.

same rate. Appellant claims that, by the terms of the note, the interest should have been compounded. The note provided for "interest at the rate of 8 per cent per annum after date, payable annually * * *," and that, "should any of the principal or interest not be paid when due, it shall bear interest at the rate of 8 per cent per annum." The latter clause does not contain the words "payable annually." The identical question was before this court and decided in *Wood v. Whisler*, 67 Iowa 676. The rule announced in that case was followed by the court below. Appellant, however, insists that the note should be construed the same as though the words "payable annually" appeared in the latter clause. The terms of the note are clear and specific, and we see no escape from the method followed by the court.

VII. Complaint is also made of the court's instructions allowing interest on the several items of the counterclaim. Interest was allowed on Count I from March 1, 1904, and on

8. INTEREST: time and computation: unliquidated set-off. Counts II and III from March 1, 1914, at 6 per cent. In its instructions, the court permitted the jury to allow interest upon the amount found due on Count II from July 24, 1913, but corrected the verdict, rather than to grant a new trial. The parties contemplated at some time a mutual adjustment and offset of claims. According to the evidence, the notes were executed with that in mind. The allowance of interest at the legal rate on the unsettled accounts was, we think, proper and just. The date finally settled upon by the court, which was the one on which answer was filed, we think is correct.

Many exceptions were preserved to the instructions. Nearly all of the exceptions raise the questions already discussed, and were directed at the general theory upon which the court submitted the case to the jury. From the outset appellant contended that appellee was entitled to recover nothing on the several items of his counterclaim, and that a verdict should have been directed for the plaintiff. We have already indicated our view to the contrary. We shall not set out the evidence, which is voluminous and conflicting. The case has been tried three times in the court below, and this is the third appeal. The same judge presided at each of the trials, and the most painstaking care was observed throughout the trial and in the submission of the case to the jury. Without further discussion of the general features of the trial and the instructions, we deem it sufficient to say that, in our opinion, no reversible error is shown.

VIII. Reference should be made, however, to the contention of appellant that no contract to furnish material and lay the tile, as alleged in Count III, was proved, and that the evidence does not show that the work has been completed. Evidence tending to show a contract was introduced, one item of which was a letter from Reinicker, dated August 1, 1908, in which the price suggested is $1.45 per rod feet. Recovery is asked upon this basis. Another letter, dated April 25, 1912, refers to the tiling, and closed as follows:

"If I damaged any of your ground or crop while draining I want to pay for it. Come up by the 20th of May and I will take your note for $5,000 again."

One Fox was the agent of Reinicker. Testimony was in-

troduced tending to show that Fox also solicited appellee to do the tiling. Objection was urged to this testimony, upon the ground that the agency was not established, and that parol testimony was inadmissible. The offer contained in the letter above referred to was not accepted in writing. It was, therefore, proper for appellee to show that same was, in fact, accepted. In any event, the evidence shows without conflict that appellee constructed the tile. As throwing further light upon the many transactions involved in this controversy, we call attention to a further letter written by Reinicker, March 6, 1912, from York, Pennsylvania, as follows:

"Dear Cousin: I am not very well. I have been talking to my sister. We would like to have things settled up. We have been ditching on the Rose Grove for about ten years. I have checked the ditches and they are all right as soon as the ground is settled I want you to count up the laterals and fill the holes and the ditches then we will settle. If I have damaged any of your crop I will make it right. Have you stayed any time in my rooms since I left?"

The signature to the above letters was identified by appellee and one other witness. Appellee was also permitted to testify that he received the same from the United States mail, that the **9. WITNESSES: competency: transactions with deceased: non-personal transactions.** contract, Exhibit Y-1, was pasted to the lease at the time he signed it, that the tiling referred to in Count III was done under his direction, and that he paid the expenses thereof, over the objection of appellant that the witness was incompetent, under Section 4604 of the Code of 1897. *McCorkendale v. McCorkendale,* 111 Iowa 314, is relied upon to sustain the appellant's contention. It must be conceded that this case is apparently in point. The ruling there announced has, however, been several times disapproved, and what is there said as to the competency of the witness whose testimony was before the court has, in effect, been overruled. *Britt v. Hall,* 116 Iowa 564; *Robertson v. Campbell,* 168 Iowa 47; *Scott v. Brenton,* 168 Iowa 201; *McKellar v. Harkins,* 183 Iowa 1031. It is too clear for argument that none of the transactions referred to were personal transactions. None of the sums paid by appellee for the tiling involved personal transactions with the deceased. They were all

with other parties. Ample evidence was introduced to show that Exhibit Y-1 was pasted to the lease, and that, while it was not signed separately, it was intended to be a part thereof. It was, therefore, not necessary that it be signed separately. *Junkin v. Hargrove & Arnold,* 196 Iowa 1387.

Other propositions are argued by counsel, but we have already considered and disposed of all of them that present a possible ground for reversal. The case was thoroughly and ably tried below, and nothing has been overlooked or omitted in its submission in this court. There is no reversible error in the record.—*Affirmed.*

FAVILLE, C. J., and EVANS, VERMILION, and ALBERT, JJ., concur.