FRIEDA RITTER, Appellee, v. CITY OF FORT MADISON, Appellant.

No. 40666.

FEBRUARY 10, 1931.

REHEARING DENIED MAY 6, 1931.

J. W. Napier and E. H. Pollard, for appellant.

J. M. C. Hamilton and E. W. McManus, for appellee.

GRIMM, J.—On October 16, 1929, plaintiff filed a petition at law in the District Court of Lee County, Iowa, seeking to recover damages from the defendant city.

It is alleged that the defendant maintained a sidewalk in the city of Fort Madison, abutting certain described premises and negligently and carelessly permitted a hole to remain in said sidewalk; and by reason of the length of time that said sidewalk was so permitted to remain, had knowledge of the dangerous condition of said walk, and that about nine o'clock in the evening of Sunday, August 18, 1929, plaintiff, while walking along the sidewalk, stepped into said hole, and that as a result thereof, she sprained her ankle and was otherwise injured.

On November 25, 1929, the defendant filed a motion for joinder of parties defendant by which it secured an order that the owner of the real estate upon which the defective sidewalk abutted should be made a party defendant.

On April 28, 1930, the defendant city answered, admitted its duty to maintain its sidewalks in reasonably safe condition for use by pedestrians, admitted the maintenance of the walk in question, and denied liability.

On May 5, 1930, Myrtle Donaldson, the property owner, filed a special appearance, claiming that no original notice was

served on her as required by Section 11059 of the Code of 1927. The order making her a party was afterwards rescinded.

The testimony tends to show that the defect in the sidewalk in this case, of which complaint was made, is of the character often found in cement sidewalks, resulting from the cracking and removal of the hard upper coating of the walk, followed by the disintegration and removal of a portion of the coarser layer of the cement immediately under the hard, smooth surface.

One witness testified that at the outside edge of the walk (the south edge) the hole was $3\frac{1}{4}$ inches deep at the lowest point and the width of the broken-out place was 9 inches. Six inches from the south edge the hole was $2\frac{1}{2}$ inches at the deepest point and the rest was 1-5/8 inches and the width $9\frac{1}{2}$ inches. Twelve inches from the south edge the hole was practically the same as at six inches from the edge. Eighteen inches from the edge the hole was 1-3/8 inches to 2 inches deep, and the width of the break $9\frac{1}{2}$ inches.

The witnesses vary somewhat in their estimates of the size and depth of the hole. The sidewalk was on the north side of an east and west street. The hole in controversy was a short distance east of a north and south street, west of which street there was no sidewalk on the east and west street. The property south of the street at the point of the accident, and in that vicinity, was not improved, and bordered on the river and railroad tracks. There was not much traffic in that block.

There is abundant evidence in the record that a defect, substantially of the condition described, had existed in the sidewalk for several months.

The plaintiff was forty years of age and formerly lived in the immediate vicinity of the defect. For over twenty years, the plaintiff had owned a house a very few doors from the place of the accident. For a few months prior to the accident, plaintiff had lived in Chicago where she was employed. The accident happened on Sunday evening, August 18, 1929.

Numerous errors are assigned.

■ I. The appellant complains because the court refused to permit the introduction of the Metropolitan Hotel Register for the purpose of showing that the plaintiff had not registered at said hotel on her arrival in Fort Madison Saturday morning, August 17, 1929, as she testified she did.

The plaintiff had testified that she arrived in Fort Madison about four o'clock on Saturday morning, that she had stayed at the home of Darnolds, who lived a few doors east of the property owned by the plaintiff, and in the immediate vicinity of the defective sidewalk.

It developed later from the testimony of Mrs. Darnold that plaintiff did not stay at the home of Darnolds on the night of August 17th, and that Mrs. Darnold did not know where she stayed.

The plaintiff then returned to the witness stand and testified, under direct examination, that she stayed at the Metropolitan Hotel and had not been at her own home until she went down with Mr. and Mrs. Darnold on the evening of and at the time of the accident. At this time, on cross-examination, plaintiff swore she registered at the Metropolitan Hotel when she came in on Saturday morning early and signed the register in her own hand-writing, in her own name.

It clearly appears from the evidence that in the month of March of the same year when the plaintiff left her home to go to Chicago, she was aware that the sidewalk was cracking at the south margin at the place where the accident happened. The question whether plaintiff had, on Saturday and Sunday, before the accident, passed over this sidewalk which she knew had started to break up some months before, was a material inquiry.

It appears that plaintiff's brother was occupying a room in the house owned by plaintiff in the immediate vicinity of the place of the accident and that in the room he had some of his personal effects "piled up." The plaintiff at one time in her examination, testified that on Saturday morning previous to the accident, she went to see her brother where he was "engaged in firing a furnace in a church," at which time the evidence tends to show she got a key to her house. There is some conflict as to how long she kept the key. There is evidence to the effect that she brought it back to her brother "when she finished with it," which was before the accident. The evidence also tends to show she brought with her from Chicago some clothing which she wished to leave in the house, which was being used by her brother. It is quite apparent that she, by her testimony, was attempting to create the impression before the jury that she had not gone to her house until Sunday evening, August 18th, when

the accident happened. On the other hand, as there was no sidewalk in the block west of the property and as the testimony tends to show she got the key from her brother on Saturday morning, August 17th, the jury might easily find that she had gone to her home on Saturday and Sunday at different times, and in doing so had passed over the particular part of the sidewalk where the injury occurred. Whether she had registered and was living at the hotel or whether she had not registered and was not living at the hotel, but stopping at her own property in the immediate vicinity of the broken sidewalk was a material inquiry. It was a circumstance which should have gone to the jury to be by them weighed in connection with all the other facts and circumstances bearing upon the knowledge of the plaintiff of the defective sidewalk. Moreover, the plaintiff had herself opened the subject by testifying that she had registered at the hotel. Manifestly, this was for the purpose of conveying the impression that she was either at the hotel or at Darnold's all of the time up to the time of the accident, and, consequently, did not see the defective sidewalk.

The defendant offered to prove that the plaintiff was not registered at the Metropolitan Hotel on the 16th, 17th or 18th of August, 1929, and that she did not stay at the Metropolitan Hotel on the night of August 17, 1929.

The offer was made to be taken in connection with other testimony to prove that plaintiff spent the night of August 17, 1929, at her own home, 1021½ Avenue I, which is in the immediate vicinity of the place of the accident, and that the plaintiff, in passing to and from her home during those days, had gained knowledge of the defective condition of the sidewalk prior to the injury and after her return from Chicago. It will be recalled that the sidewalk in question is the only one she could have used in going to and from her said house.

In the light of the evidence in this case, including the fact that the plaintiff testified in chief that she had stayed at the Darnolds' from the time of her arrival on the morning of August 16th up to the time of the accident on the evening of August 18th and said nothing whatever about being at the Metropolitan Hotel and that thereafter Mrs. Darnold testified that the plaintiff had not stayed at the Darnolds' house on the evening of the 17th and that Mrs. Darnold did not know where the plaintiff

had stayed that night, and in light of the fact that the plaintiff then returned to the witness stand and testified in substance that she stayed at the Metropolitan Hotel during the two days and the night in controversy and had not been down at her own home until she went down there with Mr. and Mrs. Darnold on the evening of the accident, we think this register offered, not only for impeachment purposes, but for the other purposes hereinbefore stated, should have been admitted. That the plaintiff knew the condition of the sidewalk at the time of the accident was a permissible inference from the evidence received and offered.

II. The defendant city complains of Instructions No. 5 and No. 7. In instruction No. 5, the jury was told that if it found from the evidence that the plaintiff was injured by the defective sidewalk in the street and without negligence on the plaintiff's part "it is not necessary in order to entitle the plaintiff to recover that she should prove actual notice of defect to the city *if the same was the result of the construction by the defendant,* or if the defect was notorious, and had remained so for a sufficient length of time to enable defendant by reasonable diligence to know of its existence and repair the same." (Writer's italics).

In the 7th instruction, the court said:

"If the sidewalk was properly *constructed* and afterwards became out of repair, then defendant would not be liable unless you find that it had notice of such defect." (Writer's italics).

The claim of the plaintiff in her petition is bottomed entirely on the ground that the city "maintained" its sidewalks in a faulty condition. There is no allegation in the petition in reference to faulty or negligent "construction," either as to form or materials. There was no evidence in the record in reference to the manner in which the sidewalk was constructed. There was no evidence as to who built the sidewalk. It may have been built by the property owner or otherwise; there is no evidence to show it was built by the city or even under its orders. The manner in which the sidewalk was constructed was not before the court.

It is the claim of the appellant that by the language hereinbefore quoted from Instructions No. 5 and No. 7, there was in-

jected into the case an issue not made by the pleadings or supported by the evidence.

This court has frequently said that it is reversible error to submit to the jury issues that are without support in the evidence. Barce v. City of Shenandoah, 106 Iowa 426; McDivitt v. Des Moines City Railway Co., 141 Iowa, 689; City National Bank of Auburn, Ind. v. Mason, 181 Iowa 824; Rawleigh Medical Co. v. Bane, 181 Iowa, 734; Borough v. Minneapolis & St. L. R. Co., 191 Iowa 1216; Wilkinson v. Queal Lumber Company, 203 Iowa 476; Shuck v. Keefe, 205 Iowa 365.

The plaintiff seeks to justify these instructions by citing Greenlee v. City of Belle Plaine, 204 Iowa 1055. A careful examination of the Greenlee case will disclose a very marked distinction between it and the case at bar. Here the court submitted to the jury an unpleaded element of improper construction, while in the Greenlee case, the court did not in fact submit that issue to the jury. The court stated the proposition in a general discourse concerning the liability of cities generally, but it did not actually submit it in charging the jury. Even under such circumstances this court said:

"Unquestionably, it would have been better in this generalization to have omitted any reference to 'construction.'"

If the alleged hole in the sidewalk was due to cracking, crumbling and deterioration, arising from a latent defect, the city was entitled either to actual notice of such defect or proof that the defect, in substantially the condition in which it obtained at the time of the injury, had continued for a sufficient length of time to enable the defendant, by reasonable diligence, to know of its existence and to repair the same.

The said instructions concerning construction, as applied to the facts in this case, were erroneous.

We deem it unnecessary to consider other claimed errors. For the reasons shown above, the cause must be, and is, reversed.

FAVILLE, C. J., and EVANS, MORLING and KINDIG, JJ., concur.