IN RE ESTATE OF ANNA M. LARSEN.

ROBERT L. ESBECK, Appellee, v. MARION BOOSE, Executor, Appellant.

No. 46483.

October 17, 1944.

 █ 

Bennett Cullison, of Harlan, and Fred N. Hellner, of Omaha, Nebraska, for appellant.

Hines & Higgins, of Harlan, for appellee.

Smith, J.— ██ Decedent was claimant's maternal grandmother. The claim is for services alleged to have been rendered from February 1919 to October 1940. Decedent died January 12, 1942. Her husband, claimant's grandfather, died January 10, 1919. Claimant was then seven years old and lived with his own parents, in Elk Horn, about thirty feet from his grandparents' home. He continued to live in that close proximity to decedent until his marriage in 1940.

Decedent left a will leaving her estate to three of her children, not including claimant's mother. Claimant's mother testified, over objection as to her competency under section 11257, 1939 Code of Iowa ("dead man statute"), to a conversation with decedent immediately subsequent to the death of claimant's grandfather:

"She came over and asked me if my son could come over and stay with her because she said she couldn't stay alone after my dad died."

Decedent was then sixty-five years old.

Claimant's mother also testified, over the same objection, that decedent, years later, said "she appreciated what work Bobbie had done and she was going to see that he would get paid for it someday."

There is ample evidence to the effect that thereafter claimant for twenty-one years stayed at decedent's home nights and for breakfasts, but otherwise lived with his parents, who purchased

his clothes and paid for his support and sent him to school. There is. testimony that claimant over this period of time did such chores for decedent as feeding chickens, tending furnace, carrying out ashes, bringing in water, mowing lawn, putting on screens, spading garden, and washing windows. After he became twenty-one years old he looked after decedent's business, paying bills, cashing checks, and collecting rents. The extent and value of his services are not involved on this appeal. There is, of course, conflict in the evidence as to the extent of service rendered. The jury verdict was in claimant's favor for $2,000. The executor appeals.

Two propositions only are urged on appeal: (1) The trial court erred in overruling objections to the competency (under the statute) of claimant's mother to testify to the personal transaction with her mother; and (2) the court erred in refusing to hold, as a matter of law, that the record showed the services were rendered gratuitously and without expectation of payment.

I. Appellant executor contends that Mrs. Esbeck, appellee's mother, was incompetent as a witness to personal transactions and communications between herself and decedent. The theory advanced at this point is that the statute makes incompetent "any person interested in the event" of the action *and* "any person from, through, or under whom any such party or interested person derives any interest or title by assignment *or otherwise*"; and it is argued that claimant's mother came within that classification because, "The right here asserted [by claimant] depends for its very existence upon the transaction between the mother and the grandmother," and that he is claiming through his mother in some manner "otherwise" than by assignment.

Appellant relies on this language of the opinion in McClanahan v. McClanahan, 129 Iowa 411, 413, 105 N. W. 833, 834:

"It is not necessary that the interest should be derived by transfer or assignment. It may be *'otherwise,'* and, as used, that word is one of broad significance. It means that, if the right asserted by a claimant depends for its existence and validity upon a transaction between the deceased and a third person, the evidence of such third person shall not be allowed to prove the transaction."

It may be conceded that if the claim is to be deemed one based on express contract, claimant's mother came within the classification of the statute *as thus interpreted*. The conversation between the mother and grandmother, testified to by the mother, constituted the only evidence that the services were rendered at decedent's request.

However, this broad language of the McClanahan case has been both inferentially and expressly repudiated in later decisions. See Boeck v. Milke, 141 Iowa 713, 715, 721, 118 N. W. 874, 120 N. W. 120; and In re Estate of Iwers, 225 Iowa 389, 393, 280 N. W. 579. See, also, Stiles v. Breed, 151 Iowa 86, 97, 130 N. W. 376, 380, where it is said, concerning this statute:

" 'From, through or under' has reference to the origin or devolution of property, and, unless some title to or interest therein has been derived by 'assignment or otherwise' from the party adverse to the estate, the section has no application. By 'otherwise' is meant in another manner or way, as by devise or descent. Contrary to what was intimated in McClanahan v. McClanahan, 129 Iowa 411, by express provision of the statute, the title or interest must have been derived 'from, through or under' the witness, in order to render him incompetent."

Under these later decisions the witness was competent. We are content to follow them.

II. Appellant moved for a directed verdict. His motion is based on the claim that the record conclusively shows a family relationship existed between appellee and his grandmother and that there is no proof of any express or implied contract to pay for the services.

There is some evidence that the grandmother recognized some sort of obligation to pay. She expressed to claimant's mother an intention to pay that would tend to negative any thought that she considered the services were gratuitous.

Another witness testified that decedent told her:

" * * * she didn't know how she would have got along without him and she would see that he got paid for it. Q. She stated that she was going to see that he was going to be paid for it?

A. That's right. Q. Did she say that to you more than one time? A. Yes, she did.''

This was in November or December 1941.

Testimony of this sort is to be cautiously received. Bohen v. North American L. Ins. Co., 188 Iowa 1349, 1363, 177 N. W. 706; In re Estate of Rich, 199 Iowa 902, 916, 917, 200 N. W. 713. But its weight is for the jury under proper instructions.

It is true these statements do not admit the existence of an express contract or understanding. The testimony was, however, admissible and material as bearing on the question of implied contract. The statements, if made, tend to show decedent's own thought as to whether such family relationship existed as would justify acceptance of the services without expectation of paying for them.

But does the record, even without the testimony as to these declarations, conclusively show a family relationship? Claimant was a grandson of decedent but did not make his home with her in the usual sense. He slept at her house, the jury could find, because she ''couldn't stay alone'' after her husband died. He ate breakfasts there, but it could be inferred that was on account of the work he had to do for her rather than being proof that he was a member of her family. At least, it is by no means conclusive of family relationship.

No evidence is adduced showing that decedent assumed any parental authority over him or responsibility for him. On the contrary, he continued to live with his parents, who looked after and supported him, purchased his clothes, and sent him to school. Even where the actual relationship of parent and child exists the presumption that services rendered by an adult child are gratuitous is not conclusive nor need an express promise to pay be shown to overcome it. Clark v. Krogh, 225 Iowa 479, 280 N. W. 635; Marietta v. Marietta, 90 Iowa 201, 57 N. W. 708.

Appellant cites 34 C. J. S. 113, section 371 (4) to the doctrine that services rendered by a grandchild to a grandparent are presumptively gratuitous where they ''lived together as members of one family.'' He argues that claimant here was a member of *two* families, his parents' and his grandmother's.

We are not impressed by the argument. Nor do we think

other authorities cited by appellant are controlling. Allen v. Bryson, 67 Iowa 591, 25 N. W. 820, 56 Am. Rep. 358, and Smith v. Johnson, 45 Iowa 308, are not helpful here. We have already referred to Clark v. Krogh, supra.

The *general* rule is unquestioned that upon rendition and acceptance of services the law implies an intention to pay. And it is equally well settled that where the one rendering the service is a member of the other's family a presumption arises that the services are gratuitous. In re Estate of Bishop, 130 Iowa 250, 253, 106 N. W. 637. But where there is substantial conflict in the evidence, the question as to whether the one rendering the service did so as a member of decedent's family is for the jury. In re Estate of Bishop, supra.

That seems to be the situation here. We find no error and the judgment is affirmed.—Affirmed.

All JUSTICES concur.