IN RE ESTATE OF MIKE H. KLEPPER.

HENRY KLEPPER et ux., appellees, v. JOSEPH H. SCHALLER, administrator, appellant.

No. 48172.

(Reported in 57 N.W.2d 565)

MARCH 10, 1953.

Joseph P. Hand, of Emmetsburg, and Shumway, Kelly & Fristedt, of Algona, for appellant.

Linnan & Lynch, of Algona, for appellees.

HAYS, J.—Claimants filed a claim against decedent's estate for services rendered to decedent and ask for the reasonable value thereof. Defendant-administrator by answer asserts that the services were rendered pursuant to a contract and have been fully paid for; also, that due to a family relationship they were gratuitous. By reply both defenses were denied. The claim was allowed by a jury and the administrator appeals.

Appellant asserts error in the instructions given on both issues, to wit, payment under specific contract, and the family relationship. Appellees assert that there is no showing of a family relationship. No issue is presented as to the rendition of the services nor as to the reasonable value thereof.

The facts are not in dispute. Decedent (Mike Klepper) died in November 1950 at the age of seventy-eight. His wife died in 1942. He is survived by six children, all adults, including the claimant Henry Klepper. After the death of his wife, Mike Klepper continued to reside on his two-hundred-acre farm. Le-Roy, an adult unmarried son, lived at home with him and helped with the farming. They had a housekeeper. In 1945 LeRoy

rented the farm on a fifty-fifty basis. His father furnished the necessary farm machinery and paid all of the living expenses, including those for a housekeeper. In April 1945 Mike Klepper suffered a stroke which left him unable to work but able to be up and around and to take care of himself. Thereafter Dora Kisch, a daughter, managed her father's affairs, collecting the rents from LeRoy and paying the household bills.

In September 1945 a family conference was held, attended by the six children and Mike Klepper. The purpose thereof was to arrange a plan whereby Mike Klepper could continue to live on the home farm and to reduce the expenses, particularly as to the housekeeper. LeRoy had offered to remain as a tenant and pay one half of the household expenses, including those of the housekeeper. At least part of the family wanted him to pay all of the expenses and to purchase a half interest in the machinery. This LeRoy refused to do.

Henry Klepper, claimant, was at the time forty-eight years of age, married and living with his family on a neighboring farm. He had left his father's home in 1927 at the time of his marriage. At this family conference and after LeRoy had refused to continue on as a tenant, Henry agreed to lease the farm for the following year. A written lease was entered into, signed by Dora Kisch on behalf of her father. It provided in part as follows:

"Farmed on a 50/50 basis; all income and expense in connection with the operation of this farm will be shared on the 50/50 basis; party of the first part will keep his machinery on the said premises for the use of the second party, the party of the second part will furnish what machinery he now owns, ownership of the said machinery shall remain in the parties as furnished. Party of the first part will reside with the party of the second part, without any further charges whatsoever."

Pursuant to the lease, Henry Klepper and his family moved onto the farm and into his father's house in March 1946. In June 1946 Mike Klepper suffered a second stroke which left him a helpless invalid, requiring the care and attention of an infant. In the fall of 1946 a new lease was executed similar to the first

one except for the following clause, "In the event that the party of the first part should die before the first day of March 1947, there would be a sale of the items he owns." A similar lease, except as to the dates, was made in the fall of 1947. Thereafter, until decedent's death in November 1950, the tenancy was continued under the terms of the last lease. About a year and a half prior to decedent's death Henry Klepper talked with Dora Kisch concerning pay for care furnished the father.

▪ I. As to the defense of a "family relationship"—At the close of the testimony appellees moved to strike this defense due to a lack of proof to sustain it. This motion was overruled and the same was submitted to the jury. In submitting the same to the jury the court said in Instruction No. 5, "Such relationship imposes mutual duties and responsibilities upon the parties involved, and implies on the part of the one receiving services a duty to return services fairly proportional to those received." Error thereto is alleged in that it in effect tells the jury that it cannot find a family relationship exists, since under the undisputed testimony the decedent was a helpless invalid and wholly incapable of reciprocating. That the instruction should have been qualified by the word "generally" or "usually" as reciprocal services is not absolutely essential to such a relationship. While such a qualification might properly have been given, we think the instruction correctly states the rule of law as expressed by this court. We said in In re Estate of Talty, 232 Iowa 280, 287, 5 N.W.2d 584, 588, 144 A. L. R. 859:

"The services rendered by appellant for Thomas were entirely disproportionate to what little work the latter was able to do. Reciprocal services were neither exacted nor performed, nor was decedent mentally or physically capable of rendering such services. The presumption of gratuity due to the family relation arises because of the reciprocal character of family duties and services."

Error is also predicated upon the giving of Instructions Nos. 7 and 11. In No. 7 the jury was told that if a family relationship was shown to exist, then claimants in order to recover must show "(3) That there was an express agreement by which decedent was to pay for such services, or that such services were

rendered with the expectation on the part of claimants to receive pay therefor, and * * * of decedent to pay." Instruction No. 11 amplifies the above-quoted part of No. 7. As an abstract legal proposition the instruction is correct. However, the alleged error is that there was no pleading or proof of an express contract and that to submit such to the jury constitutes error. This also is true as an abstract legal proposition, Pierce v. Heusinkveld, 234 Iowa 1348, 14 N.W.2d 275; Jakeway v. Allen, 227 Iowa 1182, 290 N.W. 507, but it does not necessarily constitute prejudicial error, Wilson v. Else, 204 Iowa 857, 216 N.W. 33.

Conceding that the above instructions are erroneous under the instant record, were they prejudicial to appellant? We think not.

■ The question of a "family relationship" in cases of the type now before us has been considered many times by this court. The ordinary rule is that where one person performs services for another which are known to and accepted by him the law implies a promise to pay. Hopkins v. Convy, 191 Iowa 402, 404, 182 N.W. 225, 226; In re Estate of Beck, 239 Iowa 655, 656, 32 N.W.2d 217, 218. However, where it is shown that the person rendering the service is a member of the family of the person served and receiving support therein, either as a child, a relative or a visitor, a presumption of law arises that such services were gratuitous. Scully v. Scully, 28 Iowa 548; Marietta v. Marietta, 90 Iowa 201, 57 N.W. 708; In re Estate of Bishop, 130 Iowa 250, 106 N. W. 637; Snyder v. Nixon, 188 Iowa 779, 176 N.W. 808; In re Estate of Larsen, 235 Iowa 57, 15 N.W.2d 919.

■ A "family" has been defined to be a collection or collective body of persons who live under one roof and under one head or management. The so-called "family-relationship" rule is an exception to the ordinary rule above-stated and must be pleaded as an affirmative defense to be proved by the pleader. In re Estate of Talty, 232 Iowa 280, 5 N.W.2d 584, 144 A. L .R. 859.

The case of Marietta v. Marietta, 90 Iowa 201, 204, 57 N.W. 708, 709, is very similar to the instant case in many respects and has been cited many times. We there said:

"We doubt very much whether the familiar rule of the law that where a son or daughter remains under the parental roof, and works and labors as one of the family, after arriving at the age of majority, the presumption is that the services are gratuitously rendered, applies to the facts disclosed in evidence. In the case at bar the plaintiff had gone out into the world, and ceased to be a member of his father's family. He returned to his aged parents when they were unable to care for themselves. He rented the farm, and, as far as the evidence shows, he paid the rent to his father."

See also In re Estate of Bishop, supra; Clark v. Krogh, 225 Iowa 479, 280 N.W. 635; In re Estate of Talty, supra. See also an extensive annotation in 7 A. L. R.2d 8, covering the question of a "family relationship."

 In addition to claimant Henry Klepper's having ceased to be a member of his father's family many years before the time material here, it is stated in the claim filed that he returned to the home place as a tenant, under the leases above-mentioned. The appellant by answer states that the services were rendered pursuant to the contract, there being a dispute however as to the extent of the contract, which will be considered later herein. It appears without dispute that reciprocal services by decedent were impossible, due to his physical condition, with none asked for or expected, except perhaps the use of decedent's household goods and farm machinery, as provided for in the lease. We think that under this record appellant has utterly failed to show by any standard recognized as being determinative of the "family relationship", the existence of the same. As stated in Snyder v. Guthrie, 193 Iowa 624, 629, 187 N.W. 953, 956, 24 A. L. R. 950, " 'when the reason for the rule ceases, the rule itself does not apply.' " See also Yoder v. Engelbert, 155 Iowa 515, 136 N.W. 522.

 As before stated, the burden of proving this defense is upon the pleader, the defendant in the instant case, and such proof having failed, the motion of the appellees to strike this defense should have been sustained. In allowing such defense to be considered by the jury appellant received something to which he was not entitled, and even though it was submitted

under incorrect instructions no prejudice resulted against him. In re Estate of Hill, 230 Iowa 189, 297 N.W. 278; Neyens v. Gehl, 235 Iowa 115, 15 N.W.2d 888.

II. Appellant further alleges that the services were rendered under the terms of the leases, above set forth, and that there has been full payment therefor. This is based upon the clause "Party of the first part will reside with the party of the second part, without any further charges whatsoever." He contends that said clause is clear, definite and unambiguous and that extrinsic evidence in explanation thereof is not admissible; that the meaning of the contract is a matter for the court and not for the jury. On the other hand, the appellees contend that the clause, especially the word "reside", is susceptible of various meanings, with their interpretation being that it is here used in its usual concept of having a home where the individual eats and sleeps, to have a home; that it does not include the extraordinary services which were admittedly furnished by the appellees to the decedent.

█ █ The rule is well settled in this state that where the terms of an agreement are susceptible of different meanings, evidence as to the meaning in which it is used is proper. The court will place itself in the position of the parties who made the agreement as nearly as can be done by admitting evidence of surrounding facts and circumstances, the nature of the subject matter, the relation of the parties to the contract and the objects to be accomplished by the contract. Rapp v. Linebarger & Son, 149 Iowa 429, 128 N.W. 555; Riggs v. Gish, 201 Iowa 148, 205 N.W. 833; Carson v. Great Lakes Pipeline Co., 238 Iowa 50, 25 N.W.2d 855; Darnall v. Day, 240 Iowa 665, 37 N.W.2d 277. Under such a situation the question as to the meaning becomes a fact question for the jury, under proper instructions. Ball v. Davenport, 170 Iowa 33, 152 N.W. 69; West v. Smith, 101 U. S. 263, 25 L. Ed. 809. We think that the meaning of the clause in the lease was susceptible of two meanings, one favorable to appellant and the other favorable to appellees, in the light of the evidence bearing thereon. The jury were properly told what their decision must be, depending upon the construction they placed upon the contract. It was clearly in line with the established rule in this state.

Finding no error, at least none prejudicial to appellant, the judgment of the trial court should be and is affirmed.— Affirmed.

SMITH, C. J., and MULRONEY, WENNERSTRUM and OLIVER, JJ., concur.

GARFIELD, BLISS and THOMPSON, JJ., dissent.

LARSON, J., takes no part.

GARFIELD, J. (dissenting)—I respectfully dissent from Division I of the majority opinion.

I think the question whether there was a family relationship was for the jury, not the court, and claimants' motion to strike this defense was properly overruled. Claimants' argument there is no evidence to support this defense is largely based on the fact decedent was sick and therefore unable to render reciprocal services. We have never held such inability is fatal, as a matter of law, to the defense of family relationship. In fact we have held to the contrary. It is merely one of the elements to be considered by the jury in determining the existence of such a relationship.

In many cases of this kind where an adult son or daughter nursed an ailing parent unable to render reciprocal services we have held it was for the jury to determine whether the defense of family relationship should prevail. No authority cited by able counsel for claimants or by the majority supports the position that decedent's inability to render reciprocal services deprived the administrator as a matter of law of the defense of family relationship.

Yoder v. Engelbert, 155 Iowa 515, 518, 136 N.W. 522, 523, cited by the majority (but not by claimants), perhaps needs some explanation. On appeal it was there contended the gratuitous character of the services as a member of decedent's family should have been submitted to the jury. We held there was no error because there was no such issue in the case and also because of "the theory upon which the case was defended in the trial court * * *." The administrator admitted decedent intended to

pay claimant but alleged $2 per week was the agreed compensation and this had been fully paid.

In re Estate of Squire (Gaynor, J.), 168 Iowa 597, 607, 608, 150 N.W. 706, 709, is directly opposed to the principal contention claimants make on this branch of the case. Decedent there was older and more helpless than Mike Klepper was here. She died at ninety-four, Klepper at seventy-eight. She had had a paralytic stroke and could not care for herself. We reversed the trial court's allowance of the claim and held: "We do not think that the fact that no services were rendered by Mrs. Squire, or the fact that she was incapable of rendering services, authorized the conclusion that her support was not gratuitously provided for by the plaintiff."

In re Estate of Squire, supra, is cited with approval in Snyder v. Nixon, 188 Iowa 779, 782, 783, 176 N.W. 808, 809 (which the majority cites), where we said: "It does not appear that deceased did any work, or that any work was exacted of him. There were no reciprocal services exacted or rendered, nor was he capable of rendering reciprocal services, in even the slightest degree, during the time he remained with plaintiff. *These facts may not be sufficient in themselves to overcome the presumption (see In re Estate of Squire, 168 Iowa 597), yet* they have probative force, and are entitled to be considered by the jury in determining the ultimate question as to whether or not there was an intention on his part to compensate for the services rendered, *and they have some probative force in negativing the thought that the services were rendered with no intention on his part to compensate his daughter therefor."* (Emphasis added.)

Substantially the whole statement just quoted again appears in In re Estate of Kleinhesselink, 230 Iowa 1090, 1093, 1094, 300 N.W. 315, 317.

In Sheldon v. Thornburg, 153 Iowa 622, 629, 133 N.W. 1076, 1078, decedent sent for an adult sister to come to Perry from the latter's home in Keokuk to care for decedent who was "very sick." Upon appeal by the administrator it was contended the jury should have been instructed as a matter of law the services were gratuitously furnished by a member of the family and

claimant could not recover in the absence of an express contract to pay for her services. We held the trial court was right in refusing so to instruct *as a matter of law* and said:

"It is true that the attendance by one sister at the sick bed of another, and the rendition of such aid as may naturally and properly be prompted by sisterly affection and solicitude may ordinarily be presumed to be gratuitous, but the service rendered may also be of such character and extent and performed under such circumstances as to exclude the idea of gratuity, and justify a finding that compensation therefor was contemplated by both parties. The evidence in this respect was not so clear or decisive as to make the question one for the court."

See also Soderland v. Graeber, 190 Iowa 765, 775, 776, 180 N.W. 745.

Claimants also contend there is no evidence of a family relationship because Henry had left the parental home, gone out into the world, married, reared a family of his own and returned to care for his father. Reliance is placed upon the dictum the majority quotes from Marietta v. Marietta, 90 Iowa 201, 204, 57 N.W. 708, and upon In re Estate of Bishop, 130 Iowa 250, 106 N.W. 637, and Clark v. Krogh, 225 Iowa 479, 280 N.W. 635, which the majority cites.

None of these precedents supports the holding the question of family relationship should not have been submitted to the jury here. Each of them holds merely that such issue was for the jury (or the court where a jury was waived). This is also true of In re Estate of Talty, 232 Iowa 280, 5 N.W.2d 584, 144 A. L. R. 859, where the trial court directed a verdict against claimant on the ground there was a family relationship as a matter of law. We reversed the case because (1) there was no issue of family relationship pleaded and (2) such relationship did not appear as a matter of law.

Claimants make no other contention in support of their position that the family relationship question should not have been submitted to the jury. They do not argue that the making of the leases conclusively negatives such a relationship.

If the trial court rightly overruled claimants' motion to strike the defense of family relationship (i.e., if this defense

was for the jury, not the court), there is clearly no basis for holding instructions 7 and 11 were not prejudicial to appellant. In Wilson v. Else, 204 Iowa 857, 216 N.W. 33, cited by the majority, the claimant appealed because he thought the verdict for him was inadequate and we held, very properly, instructions which permitted recovery on issues not pleaded by him were not prejudicial to claimant.

Here this appellant was greatly prejudiced by instructions 7 and 11 which permitted claimants to recover *upon an issue not pleaded and which it is conceded there is no evidence to support,* i.e., "That there was an express agreement by which decedent was to pay for such services." For all we know, under these instructions this verdict for $14,300 rests upon a jury finding that decedent expressly agreed to pay for claimants' services when it is conceded there is no pleading or evidence of any such agreement. Appellant's objections to these instructions upon this ground were clearly pointed out to the trial court and are argued here. Claimants' counsel do not attempt to defend the instructions against the attack upon them.

Citation of authority should not be needed to support the conclusion instructions 7 and 11 are reversible error as appellant contends. However, these are among the many authorities that support such conclusion in addition to Pierce v. Heusinkveld, 234 Iowa 1348, 1351, 14 N.W.2d 275, 277, and Jakeway v. Allen, 227 Iowa 1182, 1189, 1190, 290 N.W. 507, cited by the majority: Porter v. Decker, 222 Iowa 1109, 1112–1114, 270 N.W. 897; Isaacs v. Bruce, 218 Iowa 759, 762, 763, 254 N.W. 57; Simmons v. Chicago, R. I. & P. R. Co., 217 Iowa 1277, 1282, 252 N.W. 516; Ritter v. City of Fort Madison, 212 Iowa 564, 569, 570, 234 N.W. 814; Tabler v. Evans, 202 Iowa 1386, 212 N.W. 161; Barce v. City of Shenandoah, 106 Iowa 426, 429, 76 N.W. 747; 53 Am. Jur., Trial, section 574, page 453 ("No instruction should be given * * * which tenders an issue that is not presented by the pleadings or supported by the evidence * * *.") ; 64 C. J., Trial, section 657.

See also In re Estate of Hurlbut, 242 Iowa 353, 359, 360, 46 N.W.2d 66, 70 ("The foregoing portions of instruction 3 constitute reversible error. * * * With no basis in the evidence

any finding on these matters would be based on surmise.");
Jaeger v. Hackert, 241 Iowa 379, 386, 41 N.W.2d 42, 46; Smith
v. Chicago, B. & Q. R. Co., 231 Iowa 278, 1 N.W.2d 225.

Porter v. Decker, supra, states (at page 1114 of 222 Iowa):
"It seems elementary that only such matters can be submitted
to a jury as are contained in the pleadings and as to which
evidence has been presented * * *. It will not do to say that
such an instruction was without prejudice."

. I also think the portion of instruction 5 quoted by the
majority near the beginning of its Division I is erroneous upon
the ground urged by appellant. Its effect is to deprive him of
the defense of family relationship unless he performed his
"duty to return services fairly proportional to those received."
Some of the authorities that support appellant's objection to
this instruction are herein discussed in the consideration of
claimants' contention there can be no family relationship without
reciprocal services. Instruction 5 is directly contrary to In re
Estate of Squire, supra, 168 Iowa 597, 607, 150 N.W. 706, and
Snyder v. Nixon, supra, 188 Iowa 779, 782, 783, 176 N.W. 808.

I would reverse.

BLISS and THOMPSON, JJ., join in this dissent.